Barbara BILODEAU, Plaintiff,

v.

MEGA INDUSTRIES, Defendant.

No. Civ. 98–281–P–C.

United States District Court,
D. Maine.

June 7, 1999.

John P. Gause, Berman & Simmons, P.A., Lewiston, ME, for plaintiff.

Kate S. Debvoise, Bernstein, Shur, Sawyer & Nelson, Portland, ME, for defendant.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Plaintiff, Barbara Bilodeau, brought suit against Defendant, Mega Industries, alleging that Defendant wrongfully terminated her on the basis of her alcoholism and seeking damages under the Americans with Disabilities Act ("the ADA" or "the Act"), 42 U.S.C. § 12101 *et seq.*, and the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. § 4551 *et seq. See* Complaint (Docket No. 1). Plaintiff claims that she was discriminated against because of an actual and/or perceived disability in violation of the ADA and the MHRA. She sought redress from both the Maine Human Rights Commission and the Equal Employment Opportunity Commission. Both agencies issued right-to-sue letters. *See* Complaint, Exhibits 1, 2. Defendant disputes the allegations of discrimination, and before the Court is Defendant's motion for summary judgment on both counts of the Complaint (Docket No. 5). Plaintiff has filed an objection thereto (Docket No. 7). For the reasons set forth below, the Court will deny, in part, and grant, in part, Defendant's motion for summary judgment.

## I. STANDARD OF REVIEW

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). Once the moving party has come forward identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any" which "it believes demonstrate the absence of a genuine issue of material fact," the adverse party may avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. *Celotex Corp. v. Catrett,* 477 U.S.

317, 322, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265 (1986).

The trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The court will not, however, pay heed to "conclusory allegations, improbable inferences [or] unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). Because Defendant has moved for summary judgment, where the facts are in dispute, the Court presents them in the light most favorable to Plaintiff.

## II. BACKGROUND

Mega Industries, located in Raymond, Maine, is in the business of manufacturing high-power, low-frequency passive microwave components for the transmission of microwave energy in linear accelerators, cyclotrons, large radar systems, and communications systems such as weather radar, tracking systems for aircraft, and weapons systems aboard ships. Defendant Mega Industries' Statement of Material Facts in Support of Its Motion for Summary Judgment (Docket No. 6) ("Defendant's Statement of Material Facts") ¶ 1. Plaintiff was hired by Mega Industries on September 28, 1995, as a lab technician, and she performed electrical tests and assembled parts. Plaintiff's Statement of Material Facts (Docket No. 9) ¶ 1; Defendant's Statement of Material Facts ¶¶ 2, 5. Throughout her period of employment, Plaintiff's job performance was rated "very good," her attitude and attendance were rated "excellent," and she received a merit increase in pay on March 11, 1996. Plaintiff's Statement of Material Facts ¶ 2; Defendant's Statement of Material Facts ¶¶ 5, 6, 7.

Defendant terminated Plaintiff in November of 1997. Plaintiff's Statement of Material Facts ¶ 8; Defendant's Statement of Material Facts ¶ 19. The rationale behind Plaintiff's discharge lies at the heart of this suit. Plaintiff contends that Defendant terminated her due to her disability—alcoholism. Defendant disagrees, contending that Plaintiff severely damaged the flanges of four directional couplers that she worked on and knowingly passed them on as qualified parts to the final work area prior to shipping, thus, concealing her faulty workmanship without correcting it.

Plaintiff suffers from alcoholism. She started drinking when she was fourteen years old and her battle with alcoholism continues to this day. Plaintiff's Statement of Material Facts ¶ 21. In 1986, Plaintiff left her job to enter St. Mary's chemical dependency program, where she was enrolled for twenty-eight days. *Id.* ¶ 23. After she completed the program, Plaintiff received out-patient, alcohol-related services, which included attending Alcoholics Anonymous ("AA") meetings at least three times per week for several years. *Id.* Over time, the intensity of her treatment decreased and by July of 1996, when she was working for Mega Industries, Plaintiff was attending AA meetings only one time every two months. *Id.* Plaintiff remained sober for ten years and eleven months after receiving treatment in 1986. *Id.* ¶ 25. Unfortunately, in the summer of 1996, while she was working for Defendant, Plaintiff experienced a relapse of her alcoholism and sought help on July 5, 1996. Id. ¶¶ 26, 27.

Plaintiff entered St. Mary's chemical dependency program and remained enrolled in the program until July 15, 1996. Plaintiff's Statement of Material Facts ¶ 3; Defendant's Statement of Material Facts ¶ 8. Upon experiencing her relapse, Plaintiff called Defendant on July 8, 1998, and spoke with Raymond Backman, Mega Industries' vice president of operations, and told him that she had experienced a relapse of her alcoholism and had sought treatment. Plaintiff's Statement of Material Facts ¶ 3; Defendant's Statement of Material Facts ¶¶ 9, 10. This was the first time that Defendant was made aware of

Plaintiff's alcoholism. Plaintiff's Statement of Material Facts ¶ 3; Defendant's Statement of Material Facts ¶ 9. When Plaintiff was released from St. Mary's, her follow-up care included AA meetings, medication, and counseling. Plaintiff's Statement of Material Facts ¶ 27.

When Plaintiff returned to work, she was treated coldly by management employees. Plaintiff's Statement of Material Facts ¶¶ 4, 7. For example, on one occasion, Raymond Backman communicated to Plaintiff his skepticism that she was maintaining her sobriety. *Id.* In addition, Defendant was not supportive of Plaintiff's ongoing need to see her psychiatrist periodically for medication management. *Id.* ¶ 5. Specifically, Plaintiff's immediate supervisor, would become angry when Plaintiff had to leave work half an hour early in order to attend her appointments, and Raymond Backman refused to permit her to make up the time missed the next day despite the fact that other employees were allowed to do so.[1] *Id.* Furthermore, Beverly Paul, the wife of the president and owner of Mega Industries, avoided contact and conversation with Plaintiff, despite their prior friendship, once she learned that Plaintiff was an alcoholic. *Id.* ¶ 7. To support her claim that she was treated differently by members of Defendant's management when they learned of her alcoholism, Plaintiff submits an affidavit of another employee, Verna Ellison, who swears that she experienced similar treatment by Raymond Backman when she returned to work after being admitted to Togus for alcohol counseling for two weeks in 1997. *Id.* ¶ 6.

On November 14, 1996, Plaintiff was fired from her lab technician position by Raymond Backman. Plaintiff's Statement of Material Facts ¶ 8; Defendant's Statement of Material Facts ¶ 19. As mentioned above, Defendant's stated reason, in Plaintiff's termination notice, for terminating Plaintiff's employment is that she severely damaged the flanges of four directional couplers that she worked on and knowingly passed them on as qualified parts to the final work area prior to shipping, thus concealing her faulty workmanship without correcting it. Defendant's Statement of Material Facts ¶ 20; Plaintiff's Statement of Material Facts ¶ 10. It is undisputed that the damaged flanges were brought to Raymond Backman's attention by John Muehleisen, manager of quality control. Defendant's Statement of Material Facts ¶ 22. In addition, one of Defendant's employees, Ron Adams, informed Raymond Backman that it was Plaintiff who had damaged the parts. *Id.* ¶ 23; Plaintiff's Statement of Material Facts ¶ 18. This was confirmed by Linda Sellick, a second employee. Defendant's Statement of Material Facts ¶ 23; Plaintiff's Statement of Material Facts ¶ 18.

Defendant's usual policy is to issue a written warning to an employee prior to termination. Defendant's 30(B)(6) Deposition through Raymond Backman ("Defendant's Deposition") at 12–13. Defendant did not issue a written warning to Plaintiff for the damaged parts in November 1997, despite the fact that she had an employment record that contained no prior written warnings. Plaintiff's Statement of Material Facts ¶¶ 11, 12. The company handbook lists "inefficiency and failure to adhere to quality standards" as reason number fifteen for the termination of an employee. Defendant's Statement of Material Facts ¶ 32. The company handbook provides that "certain offenses, because of their severity, warrant immediate temporary suspension or permanent discharge without prior warning." *Id.* Termination without warning is not unprecedented at the company. Plaintiff admits that, not including herself, two of the fifty-four employees terminated by Defendant were terminated without a warning. Plaintiff's

---

1. Defendant points out that none of the employees permitted to make up missed time were in Plaintiff's department and disputes that there was any problem with Plaintiff attending to her treatment. Defendant's Statement of Material Facts ¶ 13.

Statement of Material Facts ¶ 12. Defendant contends that seven other employees were terminated without a warning, and numerous other employees were terminated for poor-quality workmanship. Defendant's Statement of Material Facts ¶¶ 35, 36; Plaintiff's Statement of Material Facts ¶ 12. No employee has been terminated without a warning for the specific reason that Plaintiff was terminated. Defendant's Deposition at 17, 21. Finally, Defendant has employed at least four employees besides Plaintiff between 1991 and the present who management is aware have received treatment related to alcohol abuse. Defendant's Statement of Material Facts ¶ 37.

Plaintiff's battle with alcoholism continues today. Still sober after her treatment at St. Mary's, she returned to the workforce in April of 1997 and worked as a test technician in the electrical field for another company, but was laid off for lack of work on November 15, 1997. Plaintiff's Statement of Material Facts ¶ 29. In October 1997, Plaintiff had a relapse of her alcoholism, which is ongoing. Id. ¶ 31. Plaintiff presently works at two jobs—both of which are unskilled and not in the electrical field. Id. ¶ 32. She contends that she experiences headaches and chronic diarrhea, that her drinking interferes with her sleep, that she does not take care of her appearance, that she cries constantly, that she is suicidal and self-abusive, is depressed and very emotional, has memory problems, misses work because of severe hangovers, and is unable to maintain healthy relationships. Id. ¶¶ 35, 36.

## III. DISCUSSION

█ Both the ADA and its state law analog, the MHRA, seek to root out discrimination against disabled individuals. See 42 U.S.C. § 12101(b)(1) (it is the purpose of the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."); 5 M.R.S.A. § 4552 (The MHRA prohibits "discrimination in employment, housing or access to public accommodations on account of race, color, sex, physical or mental handicap."). "In analyzing the ADA and MHRA, the Court need not continuously distinguish between the two statutes as to their scope and general intent because Maine courts consistently look to federal law in interpreting state anti-discriminatory statues." *Soileau v. Guilford of Maine, Inc.*, 928 F.Supp. 37, 45 (D.Me.1996), *aff'd* 105 F.3d 12 (1st Cir.1997) (citing *Winston v. Maine Technical College Sys.*, 631 A.2d 70, 74–75 (Me.1993); *Bowen v. Dep't. of Human Serv.*, 606 A.2d 1051, 1053 (Me.1992); *Plourde v. Scott Paper Co.*, 552 A.2d 1257, 1261–62 (Me.1989)); *see also Quint v. Staley Mfg. Co.*, 172 F.3d 1, 9–12, 16 (1st Cir.1999); *Arnold v. United Parcel Serv.*, 136 F.3d 854, 857 n. 2 (1st Cir.1998).[2]

---

2. Plaintiff contends that the definition of disability under the MHRA is broader than that of the ADA. The Court disagrees. The MHRA defines a disabled individual as a person who: "A. Has a physical or mental disability; B. Has a record of a physical or mental disability; or C. Is regarded as having a physical or mental disability." 5 M.R.S.A. § 4553(7). A physical or mental disability under the MHRA is defined as meaning,

any disability, infirmity, malformation, disfigurement, congenital defect or mental condition caused by bodily injury, accident, disease, birth defect, environmental conditions or illness, and includes the physical or mental condition of a person that constitutes a substantial disability as determined by a physical or, in the case of mental

disability, by a psychiatrist or psychologist, as well as any other health or sensory impairment that requires special education, vocational rehabilitation or related services. 5 M.R.S.A. § 4553(7–A). Plaintiff points out that the ADA, on the other hand, defines a "disability" as (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual. See 42 U.S.C. § 12102(2). Plaintiff contends that the ADA is more limited in that, in order to be eligible to sue under the ADA, an individual must suffer from an impairment that "substantially limits" a "major life activity," which is not required to be eligible to sue under the MHRA.

No other court considering claims under both the ADA and the MHRA have conducted the analysis of whether an individual is dis-

Accordingly, the Court will focus on the ADA and its implementing regulations; however, this analysis applies with equal force to Plaintiff's MHRA claim.

The United States Court of Appeals for the First Circuit has explained that,

> [i]n the employment context, the ADA prohibits a covered entity (defined as a person engaged in an industry affecting commerce who has fifteen or more employees) from discriminating against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

*Jacques v. Clean–Up Group, Inc.*, 96 F.3d 506, 510 (1st Cir.1996) (internal citations omitted); 42 U.S.C. § 12112(a). The statute defines "[a] qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

■ To establish a claim of disability discrimination under the ADA, a plaintiff must prove three things by a preponderance of the evidence: first, that he or she was disabled within the meaning of the Act; second, that with or without reasonable accommodation, he or she was able to perform the essential functions of the job; and third, that the employer discharged him or her because of his or her disability. *See Criado v. IBM Corp.*, 145 F.3d 437, 441 (1st Cir.1998); *Jacques*, 96 F.3d at 511 (quoting *Katz v. City Metal Co., Inc.*, 87

F.3d 26, 30 (1st Cir.1996)); *Soileau*, 928 F.Supp. at 45. If a plaintiff lacks direct evidence of discrimination, he or she can prove his or her case "by using the prima facie case and burden shifting methods that originated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Jacques*, 96 F.3d at 511 (quoting *Katz*, 87 F.3d at 30); *Soileau*, 928 F.Supp. at 45. Maine courts also employ this burden-shifting framework to analyze MHRA claims in certain discrimination cases. *Maine Human Rights Comm'n for Use of Kellman v. Dep't. of Corrections*, 474 A.2d 860, 866–67 (Me. 1984); *Maine Human Rights Comm'n v. City of Auburn*, 408 A.2d 1253, 1261–62 (Me.1979).

■ As applied to a motion for summary judgment, the first prong of the *McDonnell Douglas* analysis, requires the plaintiff to initially demonstrate a prima facie case of discrimination by showing that he or she,

> (i) has a disability within the meaning of the Act; (ii) is qualified to perform the essential functions of the job with or without reasonable accommodations; (iii) was subject to an adverse employment action by a company subject to the Act; (iv) was replaced by a non-disabled person or was treated less favorably than non-disabled employees; and (v) suffered damages as a result.

*Jacques*, 96 F.3d at 511. It is not contested in the papers filed for purposes of summary judgment that Plaintiff was "denied an employment opportunity" or, in other words, "was subject to an adverse employment action by a company subject to the Act" and that she suffered damages

---

abled separately. *See Quint*, 172 F.3d at 9–12, 16; *Arnold*, 136 F.3d at 857 n. 2; *Soileau*, 928 F.Supp. at 45. Moreover, the Supreme Judicial Court of Maine noted that the statutory definition of physical or mental disability under the MHRA has been supplemented by regulation as follows:

> An applicant or employee who has a 'physical or mental handicap' means any person who has a physical or mental impairment

which substantially limits one or more of such person's major life activities, has a record of such impairment, or is regarded as having such an impairment.

*Winston*, 631 A.2d at 74 (citing Me. Human Rights Comm'n Employment Reg. § 3.02(C)(1)). Accordingly, the Court rejects Plaintiff's contention and applies the same analysis to both the ADA the MHRA claims.

as a result. The facts indicate that she was fired on November 14, 1996. Also, no dispute exists between the parties that Plaintiff was "otherwise qualified" or "qualified to perform the essential functions of the job with or without reasonable accommodations." The point of contention between the parties is whether Plaintiff can present evidence on the first and fourth parts of the prima facie case: (1) that she is disabled under the ADA and MHRA and (4) that Plaintiff was treated less favorably than were nondisabled persons at the company.

*A. Prima Facie Case of Discrimination.*

*1. "Disabled" Under the ADA and the MHRA.*

The Court turns to the standards governing a disability under the ADA.

If an individual is not 'disabled' within the meaning of one of the three prongs, the ADA does not protect that person against discrimination on the basis of his [or her] disability and we need not proceed beyond this threshold issue to determine either whether any adverse action has been taken based upon the person's disability or whether the employer should have reasonably accommodated that disability.

*Arnold,* 136 F.3d at 858–59. The ADA defines a "disability" as (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) having a record of such an impairment; or (C) being regarded as having such an impairment. *See* 42 U.S.C. § 12102(2). Plaintiff claims that she qualifies as disabled under the three ADA definitions. As the discussion below demonstrates, the Court will deny summary judgment as to whether Plaintiff is disabled under the first definition and will grant summary judgment for Defendant as to whether Plaintiff is disabled under the "record of" and "regarded as" definitions.

*(i) A physical or mental impairment that substantially limits a major life activity.*

A disability under subsection (A) turns on three requirements: (1) a physical or mental impairment, that (2) "substantially limits," one of the plaintiff's (3) "major life activities." *See* 42 U.S.C. § 12102(2)(A); *Soileau v. Guilford of Maine, Inc.,* 105 F.3d 12, 15 (1st Cir.1997). Plaintiff and Defendant agree that alcoholism is a mental impairment within the meaning of the ADA. *See* Defendant's Motion for Summary Judgment (Docket No. 5) at 5; *see also Leary v. Dalton,* 58 F.3d 748, 752 (1st Cir.1995); *Cook v. State of Rhode Island Dep't of Mental Health, Retardation & Hosps.,* 10 F.3d 17, 24 (1st Cir.1993). That Plaintiff suffers from a mental impairment alone, however, does not qualify her as disabled under the ADA.[3] *See Soileau,* 105 F.3d at 15. Indeed, the parties disagree as to whether Plaintiff's alcoholism rose to the level of a disability as defined under the ADA in that it substantially impaired a major life activity.

Plaintiff contends that her alcoholism interferes with two major life activities: (1) her ability to care for herself and (2) her ability to work. It is undisputed that "caring for oneself" and "working" are major life activities, that, if substantially impaired, confer disabled status to Plaintiff under the Act.[4]

To determine whether Plaintiff's ability to care for herself and to work were substantially limited by her alcoholism, the Court turns to the ADA's implementing regulations that define "substantially lim-

---

3. "The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." 29 C.F.R. § 1630.2(j), App.

4. "Major life activities" are defined by the ADA implementing regulations as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

its." Title 29 C.F.R. § 1630.2(j)(1) defines "substantially limits" as:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

Title 29 C.F.R. § 1630.2(j)(2) lists the following as factors to be considered in determining whether an individual is substantially limited in a major life activity: (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long-term impact or the expected permanent or long-term impact of or resulting from the impairment. *See Quint,* 172 F.3d at 5.

Plaintiff has been drinking on and off since she was fourteen years of age, has been hospitalized twice for treatment, the first time for twenty-eight days in 1986 and the second time in 1996 for eleven days and, at the time of this motion, Plaintiff was continuing to drink alcohol. Plaintiff's Statement of Material Facts ¶¶ 21, 23, 26, 27, 31. From these facts, the Court can conclude that Plaintiff's alcoholism is severe and, if left untreated, is likely to have a permanent long-term impact on her life. However, to be eligible to sue under the ADA, Plaintiff must still demonstrate that her alcoholism renders her incapable of working or caring for herself or significantly restricts the condition, manner, or duration under which she can work or care for herself as compared with that of an average person. *See* 29 C.F.R. § 1630.2(j).

■ The Court will first address whether Plaintiff is substantially limited in the major life activity of caring for herself and will then examine whether she is substantially limited in working. *See Katz,* 87 F.3d at 31 n. 3. The determination of whether an impairment substantially limits a major activity is a fact-specific inquiry and must be made on an individual basis. *See id.* at 32. Furthermore, a court must make its determination "without considering the ameliorative effects of medication, prostheses, or other mitigating measures," on the underlying mental condition. *Arnold,* 136 F.3d at 863. Furthermore, the determination of whether. Plaintiff was substantially limited in her ability to care for herself must be assessed as of the time that she was employed by Defendant. *See Pritchard v. The Southern Co. Serv.,* 92 F.3d 1130, 1133 (11th Cir.1996), *amended in part on reh'g,* 102 F.3d 118, *cert. denied,* 520 U.S. 1274, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997); *O'Neal v. Atlanta Gas and Light Co.,* 968 F.Supp. 721, 725 (S.D.Ga. 1997).

■ A genuine issue of material fact exists as to whether Plaintiff suffered symptoms when she was terminated that substantially limited a major life activity. As stated above, the record demonstrates that Plaintiff suffers from alcoholism that, except for ten years of sobriety, has had a serious permanent impact on her life. Depositions of Plaintiff's psychiatrist and Plaintiff show that, in order to remain sober, Plaintiff requires maintenance treatment for her alcoholism that includes regular attendance at AA meetings, one-on-one counseling, and anti-depressant medications. Plaintiff's Statement of Material Facts ¶¶ 27–28, 34. In the summer of 1996, during the time that Plaintiff was employed by Defendant, Plaintiff experienced a relapse of her alcoholism. *Id.* ¶ 26; Plaintiff's Deposition at 30–31. She testifies in her deposition that "within two months ... [she] found [herself] drunk" and with the " 'spins.' " Plaintiff's Statement of Material Facts ¶ 26; Plaintiff's Deposition at 30. At that time, she and her husband separated. *Id.* Upon the advice of a friend, Plaintiff enrolled in St. Mary's chemical dependency program on July 5, 1996. *Id.* ¶ 27; Plaintiff's Deposi-

tion at 30–31. Plaintiff also testified in her deposition that, while she was drinking during the two months prior to her treatment at St. Mary's, she suffered from chronic diarrhea, did not eat properly, did not take good care of her appearance, did not sleep well, and cried all of the time. Plaintiff's Deposition at 51. In addition, after returning to work following her treatment at St. Mary's, Plaintiff was "very emotional" and felt a lot of shame and embarrassment for having had a relapse. *Id.* at 52–53.[5] Plaintiff's psychiatrist, Scott Treworgy, M.D., testified in his deposition that Plaintiff was experiencing "fleeting suicidal thoughts," difficulty in relationships, difficulty concentrating, had conflict with coworkers and had a poor energy level and appetite. Dr. Treworgy's Deposition (Plaintiff's Statement of Material Facts, Exh. E) at 34–38.

Prevailing case law has not borne out the exact parameters of "caring for oneself." It is clear from the case law that a mere inability to get along or interact with others is not sufficient to imply that a person is unable to care for oneself. *See Soileau*, 928 F.Supp. at 48. Here, Plaintiff has presented evidence of symptoms resulting from her alcoholism that are more severe than an inability to get along with others, including difficulty sleeping, difficulty eating, difficulty concentrating, and being severely emotional. The Court finds that a jury may conclude from this evidence that Plaintiff is unable to carry on the normal activities of daily life as well as an average person. Plaintiff and Dr. Treworgy will testify that she is unable to eat, sleep, take care of her appearance, has chronic diarrhea, is very emotional, and cries all of the time. Thus, the Court concludes that during the time that Plaintiff worked for Defendant between her relapse and leading up to her termination in November of 1997, Plaintiff has presented sufficient evidence from which a jury could conclude that her alcoholism "significantly restricts" her ability to care for herself "as compared to that of the average person." *See* 29 C.F.R. § 1630.2(j).

The Court also concludes that Plaintiff has presented sufficient evidence that her alcoholism, in its untreated condition, *see Arnold*, 136 F.3d at 863, impairs her ability to work. An ADA claimant assumes a more "fact-specific burden of proof in attempting to demonstrate that her impairment 'substantially limits' the major life activity of 'working.'" *Quint*, 172 F.3d at 11. Furthermore, an impairment does not substantially limit the ability to work unless the impairment significantly restricts the employee in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills and abilities. *See id.* The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. 29 C.F.R. § 1630.2(j)(3)(i).

---

**5.** Plaintiff describes other more severe symptoms prevalent when she is actively drinking that are relevant to her ability to care for herself including losing weight on a diet of coffee and beer, suicidal feelings and self abuse including cutting her arms, and missing work due to severe hangovers. Plaintiff's Statement of Material Facts ¶ 35; Plaintiff's Deposition at 50. In her papers submitted on summary judgment, Plaintiff groups these symptoms together with those that she specifically identifies as having experienced while she was employed with Defendant. In her deposition, however, Plaintiff indicates that some of the symptoms that she describes are ones that she has experienced only recently and not while she was employed by Defen-

dant. Plaintiff's Deposition at 50–51. The severity of the symptoms experienced by Plaintiff during the time she was employed by Defendant is not exactly clear on this record.

The Court notes that the United States Court of Appeals for the First Circuit has not held that the determination of whether a person is disabled for purposes of suing under the ADA must be determined at the time of termination or adverse employment decision. As the Court's discussion demonstrates, however, even without considering the most severe symptoms, Plaintiff has presented sufficient evidence from which a jury could conclude that her alcoholism substantially limited her ability to care for herself during the time that she was employed by Defendant.

When asked whether she believed that alcoholism had limited her ability to work while employed by Defendant, Plaintiff testified in her deposition that she was not able to think as quickly, react as quickly, and move as quickly, and "was doing the best [she] could to keep up with all of the demands, but maybe not as well as [she] could have or would have if [she] had never picked up a drink again." Plaintiff's Deposition at 52–53. This testimony is corroborated by that of Dr. Treworgy. Dr. Treworgy's Deposition at 33–34. In addition, Plaintiff's employment record shows that when she is receiving treatment for her alcoholism, she is able to work in the electrical field in which she was trained. Plaintiff's Statement of Material Facts ¶ 23–25, 27–29. When she has experienced a relapse in her drinking and is not sober, however, Plaintiff works in unskilled jobs ranging from assembly line stitching to waiting tables. *Id.* A jury could conclude from this evidence that Plaintiff's alcoholism substantially impairs her ability to work in a broad range of jobs in the field in which she was trained. *See Criado,* 145 F.3d at 442 (finding that evidence that plaintiff was having trouble dealing with stress and relating with co-workers, depression, and anxiety causing sleep deprivation, which affected her ability to report to work, was adequate evidence that plaintiff was disabled under the ADA). Accordingly, the Court concludes that Plaintiff has submitted sufficient evidence from which a jury could find that her alcoholism substantially limits her ability to care for herself and to work.

*(ii) Record of Such Impairment.*

The ADA's implementing regulations define a person who "has a record of such impairment" as one who "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). Plaintiff contends that she has a record of alcoholism by virtue of the fact that she was hospitalized twice for treatment. She cites

the Supreme Court case *School Board of Nassau County, Florida v. Arline,* 480 U.S. 273, 281, 107 S.Ct. 1123 1128, 94 L.Ed.2d 307 (1987), wherein the Court noted that the defendant conceded that the plaintiff's hospitalization for tuberculosis demonstrated that she had a record of a physical impairment, for her per se rule that a hospitalization establishes a record of an impairment. However, United States Appellate Courts, citing the lack of analysis conducted by the Court in *Arline,* have reasoned that such a per se rule would not make sense and have refused to interpret *Arline* to stand for the proposition that if a plaintiff suing under the ADA has been hospitalized at some point for her physical or mental impairment, she has a "record of such impairment" for purposes of being eligible to sue under 42 U.S.C. § 12102(2). *See Demming v. Housing and Redev. Auth. of Duluth, Minnesota,* 66 F.3d 950, 955 (8th Cir.1995) (citing *Byrne v. Bd. of Educ., School of West Allis–West Milwaukee,* 979 F.2d 560, 566 (7th Cir.1992); *Taylor v. U.S. Postal Service,* 946 F.2d 1214, 1217 (6th Cir.1991)). This Court agrees with the decisions of the Courts of Appeal for the Sixth, Seventh and Eighth Circuits that a hospitalization for an impairment does not in and of itself establish a record of such disability. This conclusion is underscored by the plain language of the implementing regulation which, as stated above, defines a "record of such impairment" as existing when a plaintiff has "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). Thus, to have a "record of such impairment" under the ADA, the Court concludes that a plaintiff must have been misclassified as not just having an impairment, as a hospital stay may connote, but as having an impairment that substantially limits one or more major life activities. *See Burch v. Coca–Cola Co.,* 119 F.3d 305, 321 (5th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 871, 139

L.Ed.2d 768 (1998); *Buckley v. Consol. Edison Co.,* 155 F.3d 150, 154 (2d Cir.1998) (*en banc* ); *Goldsmith .v. Jackson Mem'l. Hosp. Public Health. Trust,* 33 F.Supp.2d 1336, 1340 (S.D.Fla. 1998). To conclude that evidence of hospitalization for alcoholism establishes a record of disability would classify a treated alcoholic as having a per se disability under the Act, and the Court declines to adopt this position.

 It is undisputed that the first time that Defendant was made aware that Plaintiff suffered from alcoholism was in July of 1996, when Plaintiff called Raymond Backman and told him that she was going to be at St. Mary's for alcohol treatment. Plaintiff never provided Defendant with any medical restrictions throughout her ·term of employment with Defendant. Defendant's Statement of Material Facts ¶ 15. Plaintiff's personnel file is devoid of any indication that she suffered from alcoholism. As discussed above, the fact that Plaintiff was hospitalized ·in 1986 and 1996 for alcoholism does not establish that she had a "record of such disability" meaning that she has a history of alcoholism that substantially limits a major life activity. *See* 29 C.F.R. § 1630.2(k); *see also Goldsmith,* 33 F.Supp.2d at· 1341–42 (holding that a record of a disability was not established under the ADA by mere assertion of status as a recovering alcoholic). Accordingly, the record establishes as a matter. of law that Plaintiff does not have a record of a disability, and the Court will grant summary judgment for Defendant as to this issue.

*(iii) Regarded as Being Impaired.*

Finally, Plaintiff claims that Defendant regarded her alcoholism as an impairment that substantially limits a major life activity. The implementing regulations define an individual who is regarded as having an impairment as one who:

(1) Has a physical or mental impairment that does not substantially limit life activities but is treated· by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities · only as a result of· the attitudes of others toward such impairment; or

(3) Has none of the impairments defined in (h)(i) or (ii) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(*l* ). Here, Plaintiff has argued that subsection (1) of the regulations is potentially applicable. Under this subsection, a jury may find that an individual who has an impairment that is not substantially limiting is nevertheless "disabled" if he is treated by the employer as having an impairment that does substantially limit major life activities.

The purpose of subsection (C) is to protect impaired individuals from discrimination on the part of their employers who exclude such individuals because of the stereotypes, myths, and fears they hold of people who are so impaired. *See* 29 C.F.R. 1630.2(*l* ), App. To determine whether Defendant regarded Plaintiff as disabled because she suffered from alcoholism, the Court's focus must be on the effect that Plaintiff's alcoholism had on Defendant. *See Byrne,* 979 F.2d at 567. Plaintiff must show more than just that Defendant believed she had an impairment. To prevail under subsection (C), Plaintiff must show that Defendant perceived her as disabled in the sense that she had an impairment that substantially limited a major .life activity. *See Soileau,* 928 F.Supp. at 51; *see also Goldsmith,* 33 F.Supp.2d at 1340. Thus, to survive summary judgment . at this stage, Plaintiff must present evidence sufficient to show that Defendant regarded her as incapable of working generally, rather than performing certain functions, as discussed above, because an impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one. *See Soileau,* 928 F.Supp. at 51; 29 C.F.R. § 1630.2(j)(3)(i).

In this case, Defendant was made aware that Plaintiff suffered from alcoholism when Plaintiff told Raymond Backman that she was commencing alcoholism treatment at St. Mary's. Viewing the facts in a light most favorable to Plaintiff, as the Court must on summary judgment, the record shows that Raymond Backman treated Plaintiff differently after he learned that she was an alcoholic. Specifically, Raymond Backman was no longer friendly to Plaintiff and expressed skepticism concerning Plaintiff's ability to remain sober and comply with treatment. Plaintiff's Statement of Material Facts ¶¶ 4, 5. Raymond Backman also told Plaintiff that she must work faster despite the fact that she was doing the best she could with five or six projects assigned at once. *Id.* ¶ 4. To bolster her claim that she was treated differently, Plaintiff has submitted the affidavit of Verna Ellison, another employee who sought treatment for alcoholism in 1997 while working for Defendant, who attests that she was also treated differently by Raymond Backman when she returned to work. *Id.* ¶ 6, Exhibit A. Verna Ellison swears that Raymond Backman was less friendly toward her when she returned from treatment and, if she made mistakes, would ask whether she was still with "the program." *Id.* The record also shows that Plaintiff was treated differently by Beverly Paul, who avoided contact with Plaintiff after she returned to work from St. Mary's and was given a hard time by her immediate supervisor when she left work early once a month for her treatment. *Id.* ¶ 7.

Notwithstanding Plaintiff's evidence, the facts indicate that Plaintiff was not restricted or limited in her work responsibilities when she returned from St. Mary's, that she remained in her position as lab technician, and that she was entrusted with her normal responsibilities. Furthermore, Raymond Backman and Donald Paul, Sr. testified in their depositions that they viewed Plaintiff's overall work performance as average from the time she started up to the date of her termination and

did not have any concerns about Plaintiff's ability to do her job. Defendant's Statement of Material Facts ¶¶ 12, 14. Plaintiff has offered no evidence that Defendant considered her substantially limited in her ability to work either for Defendant or generally in the electrical testing field. The evidence arguably supports a finding that Raymond Backman was aware that Plaintiff was an alcoholic and may have believed that alcoholics generally are not capable of maintaining sobriety. Cast in a light most favorable to Plaintiff, the record also shows that Raymond Backman believed Plaintiff's work rate to be slower and believed, in the case of another employee, that work-related mistakes were due to that employee's alcoholism. However, even if Raymond Backman did find Plaintiff slower at her job or that her mistakes were due to her alcoholism, such perceptions do not indicate that he considered Plaintiff to be substantially limited in her work. Thus, that alone would not be actionable under the ADA. *See Soileau,* 928 F.Supp. at 51 (finding that even if employer considered employee incapable of performing certain functions, that alone would not be actionable under the ADA); *Goldsmith,* 33 F.Supp.2d at 1340–41 (finding that record contained evidence that employer regarded plaintiff as incapable of performing one procedure rather than incapable of working in the profession and, thus, claim not actionable under the ADA).

To be "regarded as having a disability," Plaintiff must be perceived by Defendant as "generally unable to work in either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). "The proper test is whether the impairment, as perceived, would affect the individual's ability to find work across the spectrum of same or similar jobs." *Soileau,* 928 F.Supp. at 51 (citing cases). Nothing suggests that Raymond Backman believed that Plaintiff's slower performance or mistakes, even if

believed to have been caused by her alcoholism, precluded her from working as a lab technician or in the electrical field generally. Members of Defendant's management testified that they were not concerned that Plaintiff's alcoholism would interfere with her job performance, and the record shows that Defendant has employed several other employees who had sought treatment for alcoholism who were not terminated from the company. Defendant's Statement of Material Facts ¶¶ 13, 14, 37. Thus, Plaintiff does not succeed in making a showing sufficient to create a genuine dispute of material fact as to whether Defendant regarded her alcoholism as a bar to her employment, and the Court will grant summary judgment for Defendant in regard to this issue.

### 2. Treated less favorably than nondisabled employees.

The fourth prong of the prima facie case requires Plaintiff to point to evidence that shows either that she was replaced by a nondisabled employee or that she was treated less favorably than similarly situated nondisabled employees. *See Jacques*, 96 F.3d at 511. Plaintiff does not directly address this element of the prima facie case in her brief. However, the Court gleans from her papers that she contends that she was treated less favorably than nondisabled employees because she was terminated without being issued a written warning, as was customary, and because no other employee, disabled or nondisabled, has been terminated for a reason similar to that purported to justify Plaintiff's termination. *See* Plaintiff's Objection to Defendant's Motion for Summary Judgment at 15.

A genuine dispute exists as to whether Plaintiff was treated less favorably than nondisabled employees. Plaintiff submits evidence that Defendant has a general policy of giving written warnings prior to terminating its employees and that, other than Plaintiff, only two of the fifty-four other employees terminated by Defendant were not given a written warning. Plaintiff's Statement of Material Facts ¶ 12. In addition, Plaintiff submits evidence that no other employee has been terminated without warning by Defendant for a reason similar to that of Plaintiff. *Id.* Plaintiff's facts are disputed by Defendant. Defendant's employment records demonstrate that at least seven other employees with no known disabilities were terminated without prior written warning and at least six other employees with no known disabilities were terminated for poor quality workmanship in 1997 and 1998. Defendant's Statement of Material Facts ¶¶ 35, 36. The employee identification number of employees terminated for poor quality workmanship do not match those of employees terminated without a warning, suggesting that poor-quality workmanship is usually grounds for a warning rather than for termination. *Id.* A jury, thus, could infer from this evidence that Plaintiff was treated less favorably than nondisabled employees in that she was fired for poor-quality workmanship without receiving a warning. Furthermore, the record demonstrates that, although a nondisabled employee was not hired to replace Plaintiff when she was terminated, her work was redistributed to nondisabled employees. Plaintiff's Statement of Material Facts ¶ 20; Defendant's Statement of Material Facts ¶ 33. Accordingly, Plaintiff has presented sufficient evidence that she was treated less favorably than nondisabled employees.

The foregoing demonstrates that Plaintiff has submitted sufficient evidence from which a jury may infer that she is disabled according to the first definition of "disability" under the ADA. The Court further concludes that Plaintiff has failed to present sufficient evidence that she had a record of such impairment or was regarded by Defendant as having such an impairment. The parties do not dispute that Plaintiff is "otherwise qualified" or "qualified to perform the essential functions of the job with or without reasonable accom-

modations," that she was subject to an adverse employment action by a company subject to the Act, and that she suffered damages as a result. Finally, the Court concludes that Plaintiff has presented sufficient evidence to create a genuine dispute of material fact as to whether she was treated less favorably than nondisabled employees. Thus, although summary judgment will be granted for Defendant as to whether Plaintiff is disabled under the ADA's second and third definitions of disability, Plaintiff has, overall, presented sufficient evidence of a prima facie case of discrimination, and summary judgment will be denied as to the first prong of the *McDonnell Douglas* analysis.

## B. *Pretext for Discrimination.*

Having found that Plaintiff has presented sufficient evidence to establish her prima facie case, pursuant to the *McDonnell Douglas* framework, a presumption of discrimination has risen. The Court must now examine whether Plaintiffs evidence is sufficient to survive summary judgment on the remaining two prongs of the *McDonnell Douglas* test. Once Plaintiff has established her prima face case, the burden of production then shifts to the defendant who must point to evidence indicating that there existed a legitimate, nondiscriminatory reason for the complained-of action. *See Dichner v. Liberty Travel,* 141 F.3d 24, 30 (1st Cir.1998). A defendant meets this burden by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for the defendant. The defendant need not persuade the trier of fact that there was no intentional discrimination; it need only produce evidence on that point. *See id.; see also St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993). Finally, if the Defendant meets its burden, Plaintiff must show that there is sufficient potential proof for a reasonable jury to find Defendant's proffered reason a mere pretext for impermissible discrimination. *See Dichner,* 141 F.3d at 30.

Here, Defendant has produced sufficient evidence of a legitimate, nondiscriminatory reason for terminating Plaintiff in November 1996. Defendant explains that Plaintiff was terminated on November 14, 1996, without warning, because management determined that she had severely damaged the flanges of four directional couplers she had worked on and knowingly passed them as qualified parts to the final work area prior to shipping, concealing her faulty workmanship without correcting it. Plaintiff's Statement of Material Facts ¶ 10; Defendant's Statement of Material Facts ¶ 20. This was explained in Plaintiff's termination notice, a memorandum included in her personnel file, and a "reject report," required to be issued by quality control when a part does not meet military specification, was issued in regard to the parts damaged on November 14, 1996. Defendant's Statement of Material Facts ¶¶ 21, 30, Exhibits D, E, F. Defendant also provides evidence of why it considered Plaintiff's behavior particularly egregious and to justify termination without warning. In his deposition, Raymond Backman explains why Plaintiff's conduct was particularly serious.

> In the lab, which I said previously is the last quality check we have, basically, and the lab does the low power testing, most of all the assembly they do the critical things. When it leaves the lab, our confidence level is that it's correct and it's ready to be maybe painted if it has to be or pressure tested, which is the final thing, and then packaged and shipped. Very important that we know that when a part comes out of the lab and goes to the final step that the part is absolutely correct, very important. If it isn't we lose customers. It's that simple. We cannot afford to have someone passing parts to the next final step, phase, that are incorrect and knowing they're incorrect, just can't.

*Id.* ¶ 24; Defendant's Deposition at 23–24. Defendant emphasizes that it was Plain-

tiff's active concealment of the damaged parts, rather than her faulty workmanship, that prompted the decision to terminate her. Defendant's Statement of Material Facts ¶¶ 25, 27; Defendant's Deposition at 13–14, 23–24. In his deposition, the following colloquy took place:

Q. What was the reason for Barbara Bilideau's termination?

A. She installed some alignment pins in the flanges of four couplers, directional couplers. And when she did, she distorted the tube that they were connected to very much out of shape. It was very obvious that they were damaged, the parts. And the only reason she was terminated is that she moved them to the next and final work area for pressure test prior to being shipped knowing—had to know that they were damaged, and she did that without coming forth with she'd made a mistake. She was trying to conceal the error.

Q. Is that the only reason for her termination?

A. It's a willful concealment of the error, that's right.

Q. That's the only reason?

A. That's the primary—yes. Because we can't have people in the lab, which is our last line of inspection for proper parts to be shipped, tested and shipped, passing on product that's inferior. Just can't do it.

Q. I'm just making sure that I understand Mega's position with regard to her termination and I'm wondering if that is the sole reason for her termination?

A. Yes, it is.

Defendant's Deposition at 13–14. The Court finds that Defendant has satisfied its burden of presenting evidence of a non-discriminatory reason for Plaintiff's termination and will grant summary judgment for Defendant on this prong of the *McDonnell Douglas* test.

Once the defendant satisfies the burden of presenting a nondiscriminatory reason for the adverse employment decision, as Defendant has done here, the presumption of discrimination established by the plaintiff's prima facie case dissolves. *See Dichner*, 141 F.3d at 30; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 1095 n. 10, 67 L.Ed.2d 207 (1981). At this point, Plaintiff must produce evidence, unaided by the original inference created by her prima facie case, that Defendant's proffered reason is a mere pretext, the real reason for her termination having been based on an impermissible animus directed toward her because of her alcoholism. *See Dichner*, 141 F.3d at 30. In the First Circuit, the ultimate burden of proof of intentional discrimination rests at all times on the plaintiff; it is "insufficient for a plaintiff merely to undermine the veracity of the employer's proffered justification," and the plaintiff is required to show both that employer's articulated reason is false and that discrimination was the actual reason for the employment action. *Dichner*, 141 F.3d at 30.

In this case, as in most discrimination cases, the issue is a factual question of motivation: could a reasonable jury find that the adverse action was taken because of the employee's disability rather than because of the purported nondiscriminatory reason? "Where a plaintiff in a discrimination case makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be 'particularly cautious' about granting the employer's motion for summary judgment." *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 167 (1st Cir.1998) (citing *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir.1983)). Summary judgment is not, however, automatically precluded even in cases where motive or intent is at issue. *See id.* If a plaintiff in a discrimination action rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation," summary judgment may be appropriate even where intent is

an issue. *See id.* (quoting *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 12 (1st Cir.1994), *cert. denied* 514 U.S. 1108, 115 S.Ct. 1958, 131 L.Ed.2d 850 (1995)). However, the role of the trial judge at the summary judgment stage "is not ... to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *See id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). With these principles to guide it, the Court turns to the question of whether Plaintiff has submitted evidence strong enough to create "a sufficient disagreement to require submission to a jury" the issue of whether Defendant's explanation is pretext for discrimination. *See id.*

An evaluation of the record, in a light most favorable to Plaintiff, leads the Court to conclude that a genuine issue of material fact exists as to whether Defendant terminated Plaintiff because she is an alcoholic rather than because she bent four flanges and concealed her faulty workmanship. Plaintiff contends that the true reason for her termination is more likely, discriminatory than not and that Defendant's explanation is unworthy of credence. Plaintiff puts forth undisputed evidence that she had a good employment record and her honesty had not been questioned in the past, thus suggesting that a termination without a warning for her first error was malapropos. Plaintiff's Statement of Material Facts ¶ 11; Defendant's Deposition at 17–19, 9; D. Paul, Sr. Deposition at 4, 10. Plaintiff's evidence also shows that she was not the last person to check the parts at the company because they went on to a pressure testing department, shipping and receiving, and a quality control station. Plaintiff's Statement of Material Facts ¶¶ 15, 16; Defendant's Deposi-

tion at 24. Whether or not the parts worked on by Plaintiff on the day she was terminated were to go on to the other stages, and whether Plaintiff knew that to be so, is not clear on this record and must be sorted out at trial. Plaintiff also presents evidence that other couplers were severely damaged the same day she was terminated and, as a result, eight of the flanges needed to be replaced, yet none of the other employees responsible were fired or disciplined.[6] Plaintiff's Statement of Material Facts ¶ 19. A reasonable inference from this evidence is that Defendant is exaggerating the egregiousness of Plaintiff's conduct and that a warning, rather than a termination, would have been more appropriate and in line with Defendant's protocol.

Moreover, a genuine dispute exists as to whether Defendant had any basis upon which to ground its conclusion that Plaintiff attempted to conceal her faulty work. Defendant emphasizes that its reason for terminating Plaintiff without a warning was not because of the faulty workmanship per se, but because she attempted to conceal her mistake and passed the parts without reporting her error. Defendant's Statement of Material Facts ¶¶ 25, 27; Defendant's Deposition at 13–14. "The ADA clearly contemplates distinguishing the issue of misconduct from an employee's status as an alcoholic," *McKey v. Occidental Chem. Corp.,* 956 F.Supp. 1313, 1319 (S.D.Texas 1997), and the Court will not interfere with a company's decision as to what misconduct is unacceptable in an industry and warrants a termination. The Court does not question that active concealment of badly damaged parts toward the end of the assembly line is unacceptable misconduct and that immediate termination is appropriate for employees that a company cannot trust to report errors.

---

**6.** Defendant challenges the strength of this evidence because Plaintiff asserted this fact in her deposition on the basis of what another employee, not working for Defendant in November of 1997, told her. It is not the role of the Court at summary judgment to weigh the evidence and it must look at the record in a light most favorable to Plaintiff. *See Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. Accordingly, the Court will consider this evidence for purposes of this motion.

However, here, Plaintiff has presented evidence tending to show that she did not try to conceal her faulty workmanship and that Defendant did not have grounds to believe that she had done so in regard to the parts damaged on November 14, 1996. Defendant acknowledges in its deposition that it did not ask Plaintiff whether she knowingly concealed the parts and did not do anything to determine whether Plaintiff had knowingly passed the parts. Plaintiffs Statement of Material Facts ¶ 13. The record supports an inference that Defendant did not properly investigate whether Plaintiff intended to conceal her faulty workmanship or was responsible in the first instance. Plaintiff testifies, and Defendant acknowledges in its deposition, that she wrote her identification number on the "move ticket" when she passed the parts and, thus, did not seriously attempt to conceal her workmanship. Plaintiff's Statement of Material Facts ¶ 18; Defendant's Deposition at 30. Plaintiff's evidence also shows that she was not the last person to check the parts at the company because they went on to a pressure testing department, shipping and receiving, and a quality control station. Plaintiff's Statement of Material Facts ¶¶ 15, 16; Defendant's Deposition at 24. In addition, it is disputed whether Plaintiff even damaged the most severely bent fourth flange, and Defendant admits that Plaintiff was not confronted with this flange when asked about the incident. Plaintiff's Statement of Material Facts ¶ 13. Because the foregoing evidence supports an inference that Defendant's reason for terminating Plaintiff was not justified under the circumstances and that the egregiousness of Plaintiff's conduct may have been exaggerated by Defendant, based upon such evidence, a jury could find that Defendant's explanation lacks credence.

As stated above, it is "insufficient for a plaintiff merely to undermine the veracity of the employer's proffered justification" and Plaintiff is required to present evidence of discriminatory motive. *Dichner*, 141 F.3d at 30. Here, Plaintiff has pre-sented circumstantial evidence that Defendant had animus toward her because of her alcoholism. Plaintiff testified in her deposition that she was treated differently by members of management when Defendant first learned of her alcoholism. Plaintiff's Statement of Material Facts ¶¶ 4, 5; Plaintiff's Deposition at 19–22. This is corroborated by the sworn statement of a second employee who claims that she experienced the same poor treatment when she returned from an alcoholism rehabilitation center. Plaintiff's Statement of Material Facts ¶ 6. Plaintiff also testifies that she was given a hard time when she left work early to attend counseling appointments and was not permitted to make up the time even though other employees were allowed to do so. *Id.* ¶ 5. Finally, close temporal proximity between two events may give rise to an inference of a causal connection. *See Hodgens*, 144 F.3d at 168. Plaintiff had a positive employment record which included no prior written warnings for errors, and Defendant had not expressed any concerns about her integrity or her work ethic prior to the incident in November of 1996. Plaintiff's Statement of Material Fact ¶¶ 2, 11; Defendant's Deposition at 9, 17–19. Despite Plaintiff's employment record, four months after Defendant learned that Plaintiff is an alcoholic and at the first instance of poor workmanship, she was terminated without warning. The Court concludes that this evidence, coupled with Plaintiff's evidence that Defendant's concern with her active concealment is unfounded, is sufficient to create a genuine dispute of material fact as to whether Defendant's explanation is pretext for discrimination.

Although Defendant presents evidence that weakens Plaintiff's evidence, the weight of Defendant's evidence is not "so one-sided that [it] must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12. Records of past terminations demonstrate that a termination without a warning is not unprecedented at the company. Employment

records show that at least seven other employees with no known disabilities were terminated without prior written warning and at least six other employees with no known disabilities were terminated for poor quality workmanship in 1997 and 1998, thus indicating that Plaintiff's termination was not out of the ordinary.[7] Defendant's Statement of Material Facts ¶¶ 35, 36. The company handbook also permits Defendant to terminate an employee without written warning and provides that inefficiency and failure to adhere to quality standards is grounds for termination. *Id.* ¶ 31. The handbook provides that

> whether these actions lead to a verbal warning, a written warning, a suspension or permanent discharge depends on the severity of the offense, its effects on others, your previous performance, and other considerations. Generally, you will be warned (verbally, then in writing) and have an opportunity to rectify your conduct. However, certain offenses, because of their severity, warrant immediate temporary suspension or permanent discharge without prior warning.

*Id.* ¶ 32, Exhibit G. Despite Defendant's showing, there is no evidence in the record that an employee has been terminated without a warning in the past for the same reason that Plaintiff was terminated.

Raymond Backman and Donald Paul, Sr. explain in their depositions that when the damaged parts were brought to their attention, they made up their minds, without knowing that Plaintiff was responsible, that whoever was responsible would be terminated. *Id.* ¶¶ 22, 26; Defendant's Deposition at 30–33; D. Paul, Sr. Deposition at 4–6. The damaged flanges were brought to Raymond Backman's attention by John Muehleisen, manager of quality control. Defendant's Statement of Materi-

al Facts ¶ 22; Defendant's Deposition at 14–16. In addition, Defendant contends that the fact that Ron Adams and Linda Sellick, nonmanagement employees, told Raymond Backman that Plaintiff was responsible indicates that they did not discriminate against Plaintiff. Defendant's Statement of Material Facts ¶ 23. Raymond Backman testified in his deposition that he was surprised when he learned that Plaintiff was responsible for the error. *Id.* ¶ 22. Furthermore, Raymond Backman and Donald Paul, Sr. testify in their depositions that they had zero concern with Plaintiff's ability to do her work because of her alcoholism. *Id.* ¶¶ 12, 14; Defendant's Deposition at 12; D. Paul, Sr.'s Deposition at 15. Plaintiff does not dispute that Ron Adams and Linda Sellick informed Raymond Backman that Plaintiff had worked on the damaged parts but disputes the assertion in her deposition that Raymond Backman and Donald Paul, Sr. made up their minds to terminate the person who damaged the parts before they knew it was her. She does not, however, provide specific facts that tend to show that her version of events is correct. Whether Defendant determined that whoever made the error would be terminated before it knew that Plaintiff was responsible raises an issue of credibility that must be determined by the fact finder after trial. The record also shows that Defendant has employed at least four other people who suffered from alcoholism in the past who were not terminated. Defendant's Statement of Material Facts ¶ 37, Exhibit H. Defendant's evidence certainly weakens Plaintiff's characterization of events. However, even if termination without warning is precedented and supported by company policy under warranting circumstances, including improper concealment of error, this evidence does not

---

7. Plaintiff contends that only two of the fifty-four employees terminated by Defendant were terminated without a warning. Plaintiff's Statement of Material Facts ¶ 12. Plaintiff rests this contention on the testimony of Raymond Backman in his deposition. Whether it is two or seven employees, the evidence shows that despite Defendant's usual policy of giving a warning prior to terminating an employee, Plaintiff's termination without a warning is not unprecedented.

resolve whether Plaintiff actively concealed her error in this case.

The question of summary judgment here is a close one because both Defendant and Plaintiff have presented evidence tending to support their respective versions of the facts on the question of whether Defendant's reason for terminating Plaintiff was legitimate or whether it was pretext to terminate her because she was an alcoholic. A jury could find that Defendant's decision to terminate Plaintiff without a warning was justified because of the seriousness of her mistake and its belief that she attempted to conceal her faulty workmanship. A jury could also find that Plaintiff did not actively conceal her mistake and that Plaintiff's alcoholism was the true reason that she was terminated. On this record, the weighing of the alternative factual scenarios requires evaluation of the credibility of the witnesses and will, thus, be left to the finder of fact after trial. Accordingly, the Court will deny Defendant summary judgment on the pretext prong of the *McDonnell Douglas* analysis of the ADA and MHRA discrimination claims.

## IV. CONCLUSION

Caution is appropriate when considering summary judgment for an employer in a discrimination action, and for the purposes of this motion, the evidence and all reasonable factual inferences have been viewed in the light most favorable to Plaintiff. To prevail on her discrimination claim under the ADA and the MHRA, Plaintiff must qualify as disabled as defined under the statutes and show that she was subject to an adverse employment action by Defendant because she had a disability and suffered damages as a result. Plaintiff has submitted evidence on summary judgment from which a jury could infer that she is disabled under the first of the three theories of disability under the ADA. She has, however, failed to meet her burden in regard to the second and third theories of disability under the ADA, and Defendant

is entitled to summary judgment on these parts of the first prong of the prima facie case. In addition, Plaintiff has met her burden on the fourth part of her prima facie case and the remaining prongs go unchallenged on summary judgment. Accordingly, the Court will deny summary judgment on the first prong (presentation of Plaintiff's prima facie case) of the *McDonnell Douglas* analysis.

Defendant has produced evidence of a nondiscriminatory reason for Plaintiff's termination and, thus, the Court will grant summary judgment for Defendant on this prong of the analysis. Finally, Plaintiff has presented sufficient evidence to create a genuine dispute as to whether Defendant's stated reason for her termination was pretext for discrimination on the basis of Plaintiff's alcoholism. The Court will thus deny summary judgment on this prong. Whether Defendant's stated reason for Plaintiff's termination is pretext for discrimination may be fully explored at trial.

Accordingly, the Court **ORDERS** that Defendant's motion for summary judgment be and, it is hereby, **DENIED** in part and **GRANTED** in part in accordance with the foregoing paragraph.