# United States Court of Appeals
## For the First Circuit

_____

Nos. 99-1702
     99-1703

MARIE MARCANO-RIVERA; OSVALDO ROMAN,

Plaintiffs, Appellees/Cross-Appellants,

v.

PUEBLO INTERNATIONAL, INC.,

Defendant, Appellant/Cross-Appellee.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Raymond L. Acosta, Senior U.S. District Judge]

_____

Before

Torruella, Chief Judge,

Lipez, Circuit Judge,

and Schwarzer,* Senior District Judge.

_____

Etienne Totti-del Valle, with whom José R. González-Nogueras,
Manuel A. Quilichini-García, Jorge C. Pizarro-García and Totti &
Rodríguez Díaz were on brief, for appellants.
    Luis R. Mellado-González, with whom Law Offices Luis R. Mellado-
González was on brief, for appellee.

_____

* Of the Northern District of California, sitting by designation.

_____

October 25, 2000
_____

**TORRUELLA, Chief Judge.**  Marie Marcano-Rivera and her husband, Osvaldo Román-Sánchez, filed this suit against Marcano's former employer, Pueblo International, Inc., on September 2, 1997.  The complaint alleges that Pueblo discriminated against Marcano because of her physical disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., as well as its Puerto Rico counterpart, Law 44 of July 2, 1995, as amended, 1 L.P.R.A. §§ 501 et seq.  The complaint also contains a claim for damages pursuant to Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141, which provides a cause of action to relatives of a tort victim.  The case went to trial, where a jury determined that Pueblo had violated both the ADA and Law 44 by discriminating against Marcano in her employment.  As a result of this finding, the jury awarded plaintiffs $275,000 in compensatory damages.  The district court subsequently doubled the damages awarded to Marcano pursuant to the remedies provision of Law 44, see 29 L.P.R.A. § 146 (a)(1), and entered judgment accordingly.  Both parties filed timely appeals.

For the reasons stated below, we affirm in part and vacate in part the judgment of the district court.

**BACKGROUND**

Plaintiff Marie Marcano-Rivera was born on June 2, 1965 with a congenital bone defect in her legs. As a result of this condition, both of her legs were amputated early in her life. Since then, she has used a wheelchair. Marcano is married to co-plaintiff Osvaldo Román-Sánchez, and both plaintiffs reside together in San Juan, Puerto Rico. Defendant, Pueblo International, Inc., is a Delaware corporation that is in the business of owning and operating retail supermarkets.

In April of 1989, Marcano began working for Pueblo as a part-time cashier. Initially, she worked at the Altamira Supermarket, which is located in San Juan, Puerto Rico. Marcano remained a part-time employee until February, 1992, at which time her status changed to full-time cashier.

In July of 1993, Marcano requested and received a transfer to X-TRA Las Américas Supermarket, which is also located in San Juan. There, Marcano continued to work as a cashier until November 3, 1993, when she was moved to the produce department to work as a weight station clerk. As a weight station clerk, Marcano weighed fruits and vegetables. She continued, however, to work as a cashier during periods of intense business activity, such as public holidays. In October of 1996, the position of weight station clerk was eliminated because the job of weighing produce was relocated to the cash register. At that time, all employees classified as weight station clerks were automatically reclassified as produce clerks regardless of their

personal circumstances. Marcano was then moved to the floral department where she remained until January 24, 1997, when she was dismissed as part of a reduction in work force that resulted in the dismissal of 197 management employees and 294 regular employees.

On February 4, 1997, Marcano filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the Anti-Discrimination Unit of the Puerto Rico Department of Labor and Human Resources. She received a right-to-sue letter from the EEOC on June 3, 1997, and thereafter filed this action in the United States District Court for the District of Puerto Rico on September 2, 1997.

On the eve of trial, Pueblo filed several motions in limine. Relevant to this appeal is Motion In Limine No. 3. In that motion, Pueblo argued that the court should exclude all evidence of alleged failures to accommodate that occurred prior to July 26, 1992. Pueblo reasoned that prior to that date neither the ADA nor Law 44 provided a private cause of action for failure to accommodate. Prior to opening statements on February 23, 1999, the district court denied the motion. As a result of that ruling, Marcano was allowed to testify regarding events that allegedly occurred prior to July 26, 1992. These included: (1) Marcano's inability to properly access the women's restroom with her wheelchair; (2) Pueblo's failure to modify the cashier station so that Marcano could comfortably work there; (3) Pueblo's failure to make Marcano a full-time employee despite the fact that she worked over

–**4**–

forty hours a week for over two and a half years; and (4) Pueblo's failure to consider Marcano for an office position at the Altamira store, allegedly because her wheelchair would not fit well into the office space.

Marcano's testimony also included several events that occurred after July 26, 1992, that she believed were indicative of Pueblo's alleged failure to accommodate her disability. First, Marcano stated that at one point in time she was informed by Pueblo that she could no longer use the handicapped parking space that was reserved for customers. This lasted approximately one month, after which Marcano once again began parking in the handicapped parking space. Second, she testified that while assigned to the position of assistant florist she was not able to use her wheelchair because the area where the florists worked was not handicap accessible. As a result, Marcano was forced to access the florists' area by walking on her amputated limbs, which she indicated led to the development of cellulitis. Third, Marcano testified that immediately prior to her termination her manager, Ceferino Torres, told her, "María, from the bottom of my heart, I don't know what they're going to do with you because Mr. Pedro Díaz doesn't know where to place you because of your physical disability." Finally, Marcano stated that it was not until she was terminated that she learned that the company had classified her as a produce clerk; until that time, she believed that she was, and always had been, a cashier.

At the end of the first day of trial, and following the direct examination of Marcano, the district court reexamined its ruling regarding the applicability of Law 44 to events that occurred before July 26, 1992.  The court stated:

> Now, in going further into the matter after it was brought up today, because the Court was not given an opportunity to look into that because you haven't brought it up, finds that the initial Law 44 did apply to discrimination in public agencies or private agencies receiving public funding and that obviously did not create a private cause of action up until July of 1992, when it was amended and then did create a private cause of action along with the Federal ADA.
>
> So I'm going to amend my ruling and state for the record that what I'm going to do is to give the jury a limiting or cautionary instruction at the time that I give the instructions stating in effect that the testimony that had been given from the time she started with Pueblo and is being allowed and was allowed to establish an animus pattern, attitude motive of the defendant as evidence of a pretext, but that any acts post July 1992, may be considered by the jury as violations of the ADA and Law 44; that is, failure to accommodate for purposes of any damages.
>
> Now, that is the limiting instruction that I'm going to give to the jury.

Pueblo then argued that a curative instruction would not be sufficient unless it clearly stated that "Pueblo had no legal obligations to accommodate prior to 1992."  The court indicated that it would consider broadening its instruction accordingly.

-6-

After the presentation of plaintiffs' evidence, Pueblo moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. The district court instructed counsel not to continue with his arguments regarding reasonable accommodation because those issues would be sent to the jury. Pueblo was, however, allowed to proceed with its motion with regard to the alleged discriminatory termination. Nevertheless, the district court denied the motion.

At the close of evidence, Pueblo renewed its motion for judgment as a matter of law. This time, the district court granted the motion in part, dismissing plaintiffs' claim for discriminatory discharge on the ground that there was no evidence to support this allegation. However, the court ruled that it would allow the remaining claims to go to the jury.

The case was submitted to the jury on February 26, 1999. As part of its lengthy instructions to the jury, the court gave the following limiting instruction regarding the applicability of the ADA and Law 44 to events which occurred prior to July 26, 1992:

> Now, the purpose of the Americans with Disabilities Act and Law 44, is to eliminate employment discrimination against individuals with disabilities. These statutes make it unlawful for an employer to intentionally discriminate against an employee because of that person's disability. These statutes went into effect on July 26, 1992. Accordingly, the defendant may only be liable under these provisions if you find them so liable for conduct incurred after July 26, 1992.

Therefore, I hereby instruct you that you should not consider in your deliberations in this case any discriminatory events prior to July 26, 1992, the date when the Americans with Disabilities Act and Law 44 went into effect. Nor should you consider the validity of plaintiff's termination as a result of defendant's reduction in force plan.

The jury returned a verdict in favor of the plaintiffs, awarding compensatory damages in the amount of $225,000 to Marcano and $50,000 to Román. On March 8, 1999, the district court entered judgment accordingly. Thereafter, Pueblo filed another motion for judgment as a matter of law and, in the alternative, a motion for new trial. In turn, plaintiffs Marcano and Román filed a motion to alter or amend the judgment. On March 31, 1999, the district court issued a ruling denying Pueblo's motions and granting in part plaintiffs' motion to double the damages awarded to Marcano from $225,000 to $450,000, pursuant to the provisions of Law 44. The court then entered an amended judgment. This appeal and cross-appeal followed.

Pueblo is the appellant/cross-appellee and appeals the jury's verdict and the amended judgment. Pueblo argues that the district court erred by allowing evidence to be presented to the jury regarding alleged acts of failure to accommodate prior to July 26, 1992, and that the damages awarded by the jury are not supported by the evidence presented at trial. Marcano and Román are appellees/cross-appellants. They appeal (1) the dismissal of Marcano's discriminatory discharge

-8-

claim, (2) the district court's rulings regarding damages, and (3) the district court's ruling regarding Pueblo's liability for alleged discriminatory acts occurring prior to July 26, 1992. For the sake of clarity, we refer to the parties by name or by their trial designations as plaintiffs and defendant.

## DISCUSSION

### I. The Plaintiffs' Claims

On appeal, the plaintiffs argue that the district court erred in four instances: (1) the dismissal for insufficient evidence of Marcano's claim of unlawful termination; (2) the court's decision not to award damages under the ADA separate from, or in addition to, the award of double damages granted pursuant to Local Law 44; (3) the court's decision not to give the jury an instruction regarding punitive damages for a violation of the ADA; and (4) the court's jury instruction that alleged acts of discrimination or non-accommodation that occurred prior to July 26, 1992 should not be considered. We see no merit in any of these arguments.

### A. <u>Unlawful Termination</u>

We begin with Marcano's claim for unlawful termination, which the district court dismissed at the close of evidence following Pueblo's motion for judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 50(a). We review the grant of judgment as a matter of law de novo, examining the facts and the evidence in the light most favorable to the

nonmovant.  See Andrade v. Jamestown Hous. Auth., 82 F.3d 1179, 1186 (1st Cir. 1996).  Accordingly, we do not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence.  See Richmond Steel, Inc. v. Puerto Rican Am. Ins. Co., 954 F.2d 19, 22 (1st Cir. 1992).  "To affirm the withdrawal of any claim from the jury, we must find that, as a matter of law, the record would permit a reasonable jury to reach only one conclusion as to that issue."  Katz v. City Metal Co., Inc., 87 F.3d 26, 28 (1st Cir. 1996); see also Gibson v. City of Cranston, 37 F.3d 731, 735 (1st Cir. 1994).  However, "[a] mere scintilla of evidence will not rise to a triable issue of fact necessary to avoid dismissal under Rule 50."  Irvine v. Murad Skin Research Lab., 194 F.3d 313, 316 (1st Cir. 1999).

Plaintiffs' unlawful termination claim is governed by the burden-shifting analysis originally set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See, e.g., Higgins v. New Balance Athletic Shoe Inc., 194 F.3d 252, 264 (1st Cir. 1999) ("In order to facilitate inquiries into whether an employer's adverse employment decision was motivated by an employee's disability, courts generally use the McDonnell Douglas burden-shifting scheme.").  The basic framework of the McDonnell Douglas analysis is well known:

> [A] plaintiff who suffers from a disability makes out a prima facie case of employment discrimination by demonstrating that she is a member of a protected group who has been denied an employment opportunity for which she was

−10−

> otherwise qualified. Such a showing gives rise
> to an inference that the employer discriminated
> due to the plaintiff's disability and places upon
> the employer the burden of articulating a
> legitimate, nondiscriminatory reason for the
> adverse employment decision. This entails only a
> burden of production, not a burden of persuasion;
> the task of proving discrimination remains the
> plaintiff's at all times. Once such a reason
> emerges, the inference raised by the prima facie
> case dissolves and the plaintiff is required to
> show . . . that the employer's proffered reason
> is a pretext for discrimination.

Dichner v. Liberty Travel, 141 F.3d 24, 29-30 (1st Cir. 1998)

(citations and footnote omitted). This analytical framework was

recently reaffirmed by the Supreme Court in Reeves v. Sanderson

Plumbing Prods., Inc., in which the Court clarified that once a

plaintiff has established a prima facie case and the employer has

offered a nondiscriminatory justification, "although the presumption of

discrimination 'drops out of the picture' once the defendant meets its

burden of production, the trier of fact may still consider the evidence

establishing plaintiff's prima facie case 'and inferences properly

drawn therefrom . . . on the issue of whether the defendant's

explanation is pretextual.'" 120 S. Ct. 2097, 2106 (2000) (citations

omitted).

We first address whether Marcano made out a prima facie case

of discrimination. Pueblo argues that plaintiff cannot establish a

prima facie demonstrating because she cannot show that other similarly

situated persons, not in the protected class, were treated more

-11-

favorably.  See Ruiz v. Posadas de San Juan Assocs., 124 F.3d 243, 247-48 (1st Cir. 1997).  In this regard, defendant stresses that the reduction in force was implemented blindly, solely according to seniority within each job classification and geographic area, and that within that body of employees no individual with less seniority than plaintiff was retained.  Plaintiff's only response is that she was improperly classified as a produce clerk in the first place, and her suggestion that such classification was discriminatory.  However, plaintiff offers no evidence that other similarly situated employees without physical disabilities were treated differently with regard to their classification.  To the contrary, the record shows that all weight station clerks (plaintiff's prior position) were reclassified as produce clerks in 1996.  Defendant also notes that plaintiff's position was not subsequently filled by a person without a disability and argues that this is further indication that her termination was made on a legitimate and nondiscriminatory basis.

Even viewing the record in the light most favorable to plaintiff, we conclude that plaintiff failed to make a prima facie showing that discrimination was a motivating factor in her termination.  All evidence in the record supports the contrary conclusion--that her termination was the result of a legitimate reduction in force by Pueblo.  We therefore affirm the district court's dismissal of plaintiff's unlawful termination claim on this ground alone.

However, even if Marcano had succeeded in making a prima facie showing of discrimination, her claim would founder on the remaining steps of the McDonnell Douglas inquiry for essentially the same reasons that her prima facie case is deficient. Pueblo stated a nondiscriminatory justification for terminating Marcano and she failed to offer sufficient evidence for a reasonable jury to find that such justification was pretextual. At trial, Pueblo presented a plethora of evidence that Marcano was terminated on January 24, 1997, due to a reduction-in-force implemented by the corporation for economic reasons. This evidence included the following: In 1996, Pueblo retained the services of Deloitte & Touche to evaluate Pueblo's operations. Deloitte & Touche recommended that Pueblo reduce its managerial and salaried full-time personnel. Pueblo made the decision to implement that recommendation and reduce its workforce. The company informed the Unión de Empleados de los Supermercados Pueblo, and a stipulation and release was negotiated and executed with the union on January 17, 1997. Pursuant to the terms of this stipulation, the RIF was implemented in strict adherence to employee seniority within each job classification and geographic area. The determination of which employees to dismiss as part of the layoff was a mathematical and blind determination which did not take into consideration any criteria other than seniority. The individual stores had no input in the determination, and the entire process was kept confidential. Including Marcano, the RIF affected 294

regular employees and 197 management employees. Within Marcano's job classification and geographical area, no employee with less seniority than her remained employed by Pueblo after the RIF.[1]

Given this evidence, there is no question that Pueblo met its burden of articulating a legitimate, nondiscriminatory reason for terminating Marcano. The burden shifts, therefore, back to Marcano to show that Pueblo's justification--the reduction in force--was a pretext for discrimination. In this regard, Marcano relies primarily on her allegation that she was never properly transferred from the cashier position and that, on January 24, 1997, her classification should have been bagger/cashier. From the record, it appears that if Marcano had been classified as a bagger/cashier on January 24th, she would not have been terminated as part of the RIF. Nevertheless, we believe that this allegation of a classification error, without more, is insufficient to show pretext. There is no dispute that when the position of weight station clerk was eliminated in 1996, all employees classified as weight station clerks were automatically reclassified as produce clerks regardless of their personal circumstances. Therefore, even if we accept that Marcano was not properly classified as a produce clerk pursuant to the terms of the collective bargaining agreement, Marcano has still not shown that the erroneous classification -- let alone the

---

[1] We note that the record also shows that co-plaintiff Román was a cashier at the time of the RIF and was not dismissed, although he too is a disabled person who assists himself with a wheelchair.

-**14**-

company's reduction in force -- was a pretext for discrimination. Because there is no evidence to indicate that Marcano's classification as a produce clerk on January 24th was discriminatory or that it was intended to result in her dismissal, Marcano's unlawful termination claim must fail as a matter of law.[2]

### B.    Damages under the ADA

We turn next to plaintiff's contention that the district court's decision erred in not awarding damages under the ADA separate from, and in addition to, the award of double damages pursuant to Local Law 44.[3] This contention is meritless. The verdict form prepared by the district court allowed the jury to determine defendant's liability separately under the ADA and Law 44, but required that damages be awarded jointly without any allocation between the two laws. Plaintiffs did not object to this aspect of the jury form.[4] Against this background, the district court concluded:

---

[2] Marcano also points to a comment allegedly made by her immediate supervisor. This argument fails because her supervisor was not a decisionmaker relevant to her dismissal as part of the corporation's reduction in force. See, e.g., Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 96, 96-97 (1st Cir. 1996).

[3] The district court correctly doubled the damages awarded to Marcano under Local Law 44. See 29 L.P.R.A. § 146(a)(1).

[4] Federal Rules of Civil Procedure 49(a) and 51 require that a party must state its objections after the charge but before the jury retires. In this Circuit, "[s]ilence after instructions, including instructions on the form of the verdict to be returned by the jury, typically constitutes a waiver of any objections." Putnam Resources v. Pateman, 958 F.2d 448, 456 (1st Cir. 1992).

> The $225,000 verdict seeks to redress all damages
> sustained by Mrs. Marcano Rivera related to
> defendant's discriminatory conduct regardless of
> the legal source.  Therefore, even though
> plaintiff Marie Marcano Rivera is entitled to a
> duplication of the jury's damages award pursuant
> to the scheme established by Law No. 44, the
> mental anguish and suffering resulting from her
> discrimination in employment is one and the same
> for both Law No. 44 and ADA.

In our opinion, the jury's verdict is not susceptible to any other interpretation.  Since the plaintiffs have provided us with no authority that convinces us otherwise, we decline to examine this argument further.[5]

### C.    Punitive Damages Instruction

Next, we consider whether the district court correctly declined to instruct the jury on punitive damages.  Punitive damages are available if a plaintiff demonstrates that her employer "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a (b)(1).  In this case, the district court ruled that "an instruction on punitive damages was not warranted given the absence of evidence in the record that defendant engaged in discriminatory practice or practices with malice or reckless

---

[5] Likewise, we are unpersuaded by the "suggestion" in defendant's reply brief that the district court should have doubled only half of the jury's $225,000 damages award pursuant to Law 44.  Defendant offers no basis for such a reading of the jury's verdict, nor do we find any in the record.

indifference to the rights of plaintiffs to be free from intentional discrimination."  Whether sufficient evidence exists to support punitive damages is a question of law which we review de novo.  See EEOC v. Wal-Mart Stores, Inc., 187 F.3d 1241, 1244 (10th Cir. 1999).

In 1999, in Kolstad v. American Dental Association, 119 S. Ct. 2118, 2124 (1999), the Supreme Court held that punitive damages are only available for a subset of cases of intentional discrimination. The Supreme Court reasoned that Congress intended to impose two standards of liability: "one for establishing a right to compensatory damages and another, higher standard that a plaintiff must satisfy to qualify for a punitive award." Id. The Court directly addressed the meaning of the terms "malice" and "reckless indifference" as they relate to the standard for punitive damages under Title VII and the ADA.  In doing so, the Court declined to limit punitive damages to cases involving intentional discrimination of an "'egregious' nature," id., clarifying that the "terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Id. This means that "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." Id. at 2125. The Court went on to hold that an employer may not be held liable in punitive damages for the acts of its employees or agents when those

acts are contrary to the employer's good faith efforts to comply with the law.  See id. at 2129.

Here, the plaintiffs have not identified any facts that would support an award of punitive damages under the principles announced in Kolstad.  The record is replete, on the other hand, with evidence that Pueblo instituted policies prohibiting any type of discrimination, trained its personnel to ensure equal treatment of employees with disabilities, and took good faith efforts to comply with the ADA. Accordingly, the district court correctly declined to instruct the jury on punitive damages in this case.

D.      **Evidence of Pre-1992 Conduct**

Finally, we turn to the district court's jury instruction that alleged acts of discrimination or non-accommodation occurring prior to July 26, 1992 should not be considered.  The district court correctly determined that neither the ADA nor Law 44 provided a private cause of action prior to July 26, 1992.  See, e.g., Morrison v. Carleton Woolen Mills, Inc., 108 F.3d 429, 443 ("Ever since the ADA became effective on July 26, 1992, the courts have consistently held that the Act is not retroactive."); Rivera-Flores v. Puerto Rico Telephone Co., 64 F.3d 742, 752 (1st Cir. 1985) (indicating that Law 44 "did not make handicap discrimination an injury redressable in a private action for damages" prior to 1992).  Plaintiffs nevertheless contend that they have a viable cause of action pursuant to Article

1802. See 31 L.P.R.A. § 5141. This argument is not well developed and rather disingenuous given the fact that Article 1868(2) of the Puerto Rico Civil Code, see 31 L.P.R.A. § 5298(2), establishes that tort claims under Article 1802 are subject to a one-year statute of limitations. Consequently, we need not determine whether plaintiffs are correct that Article 1802 provides an independent cause of action here because any such claim is clearly time-barred under the circumstances presented by this case.

For the reasons set forth above, we conclude that the district court did not err as claimed by plaintiffs, and we affirm the judgment accordingly.

## II. The Defendant's Claims

On appeal, Pueblo argues (1) that the presentation of evidence of conduct occurring before July 26, 1992 had a prejudicial effect on the jury; (2) that the damages awarded to Marcano were not supported by the evidence because some of the alleged incidents of failure to accommodate presented at trial were barred by the statute of limitations; (3) that the damages awarded to Marcano were not supported by the evidence because her claim for damages during the course of trial arose from her allegedly discriminatory termination--a claim that was dismissed by the district court; (4) that the damages awarded to Marcano were otherwise not supported by the evidence because defendant's conduct was not demonstrated to be discriminatory; and (5)

that the damages awarded to Marcano's husband were not supported by the evidence because his claim for damages arose from Marcano's termination and the termination claim was dismissed by the district court. We find only the last of these arguments persuasive, and we affirm the district court's disposition except to vacate the award of damages to Marcano's husband, Román.

### A.      Evidence of Pre-1992 Conduct

Pueblo first alleges that the district court erred in allowing evidence of acts that occurred prior to July 26, 1992 to be presented to the jury when neither the ADA nor Law 44 provided a private right of action until that date. Specifically, Pueblo believes that Marcano's testimony regarding pre-1992 events had a prejudicial effect which "no curative instruction could erase." We disagree.

As indicated, prior to opening statements, the district court denied Pueblo's motion in limine to exclude any acts of alleged failure to accommodate that occurred prior to July 26, 1992. The court, however, subsequently reexamined this ruling and reversed itself. As a result, the court offered a curative instruction as part of the jury charge. We repeat it here for the sake of clarity:

> Now, the purpose of the Americans with Disabilities Act and Law 44, is to eliminate employment discrimination against individuals with disabilities. These statutes make it unlawful for an employer to intentionally discriminate against an employee because of that person's disability. These statutes went into

effect on July 26, 1992. Accordingly, the
defendant may only be liable under these
provisions if you find them so liable for conduct
incurred after July 26, 1992.

Therefore, I hereby instruct you that you
should not consider in your deliberations in this
case any discriminatory events prior to July 26,
1992, the date when the Americans with
Disabilities Act and Law 44 went into effect.
Nor should you consider the validity of
plaintiff's termination as a result of
defendant's reduction in force plan.

This instruction was clear and emphatic, and we think that it was

sufficient to counteract the possibility of prejudice to Pueblo from

the presentation of pre-1992 conduct. Despite its general assertion of

prejudice from Marcano's testimony, the defendant has not suggested any

sufficient basis for its conjecture that the jury failed to follow the

specific curative instructions repeatedly given by the district court.

See United States v. Sepúlveda, 15 F.3d 1161, 1185 (1st Cir. 1993)

("[A]ppellate courts inquiring into the effectiveness of a trial

judge's curative instructions should start with a presumption that

jurors will follow a direct instruction to disregard matters

improvidently brought before them."). Consequently, we decline to

reverse on this issue.

B.      **Limitations Period and Sufficiency of the Evidence**

Defendant's first sufficiency-of-the-evidence challenge is

another incarnation of its prior argument that the jury was prejudiced

by the presentation of evidence of conduct for which Pueblo cannot, as

a matter of law, be held liable.  Pueblo claims that many of the discriminatory acts alleged by plaintiff occurred more than 300 days before plaintiff first filed her complaint with the Anti-Discrimination Unit of the Puerto Rico Department of Labor and was thus time-barred. Without this evidence, defendant argues, the jury's verdict is unsupported by the record.  We disagree.

Although defendant recognizes that the alleged acts might avoid the 300-day time limitation for filing a discrimination charge under the "continuing violation theory," it argues that that theory is not applicable in this case.  In particular, defendant points us to our decision in Lawton v. State Mutual Life Assurance Co., 101 F.3d 218 (1st Cir. 1996), for the proposition that a plaintiff must show a series of violations, at least one of which falls within the limitations period; defendant argues that Marcano failed to make such a showing here.  However, Lawton held that the failures to promote alleged by plaintiff in that case were not similar enough to her alleged termination to constitute serial violations, and also that the termination in that case had not been shown to be discriminatory.  See id. at 221-22.  Here, by contrast, the various incidents in the alleged "series" of discrimination are all similar in nature.  Each episode alleged to have occurred outside the limitations period was a failure

to accommodate comparable in nature[6] to the discriminatory accommodation failures occurring within the limitations period, up to plaintiff's termination.  Contrary to defendant's arguments, these failures to accommodate are plainly similar enough to constitute serial violations.  Furthermore, unlike in Lawton, the conduct falling within the limitations in period in this case was indeed established to be discriminatory.  We therefore conclude that the continuing violation theory is applicable in this case, and we reject this aspect of defendant's challenge to the jury's verdict.

## C.        Termination Claim and Sufficiency of the Evidence

Defendant next claims that the jury's verdict was not supported by the evidence because plaintiff's action was predicated on her termination claim, which was dismissed by the district court.  Pueblo made this argument repeatedly before the district court, which properly rejected it.  As much as defendant would prefer that this case be solely a termination case, plaintiff was absolutely explicit before the district court and on appeal that her claims include numerous

---

[6] Although we will not dwell on the graphic, and powerful, testimony given by plaintiff at trial, we note here that Pueblo's failure to accommodate plaintiff's disability forced her to, at times, locomote on her amputated limbs.  As early as 1993, plaintiff was forced to use a noncompliant bathroom facility, and just prior to her  termination in 1997, when she was temporarily assigned to the position of assistant florist, she was forced to work in an area not large enough for her to maneuver  in  her  wheelchair.

alleged failures to accommodate as well as her termination.  We therefore reject defendant's contention without further discussion.

### D.    Remaining Sufficiency of the Evidence Arguments

Defendant goes still further in encouraging us to overturn the jury's verdict in this case, arguing that none of the alleged conduct was shown at trial to be discriminatory.  This argument also misses the mark.

As we have recognized before, "under the ADA, the term 'discriminate' includes . . . not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . , unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999) (quoting 42 U.S.C. § 12112(b)(5)(A)) (some quotation marks omitted).

> Unlike other enumerated constructions of "discriminate," this construction does not require that an employer's action be motivated by a discriminatory animus directed at the disability.  Rather, any failure to provide reasonable accommodations for a disability is necessarily "because of a disability"--the accommodations are only deemed reasonable (and, thus, required) if they are needed because of the disability--and no proof of a particularized discriminatory animus is exigible.  See Bultemeyer v. Fort Wayne Community Schs., 100 F.3d 1281, 1283-84 (7th Cir. 1996). Hence, an employer who knows of a disability yet fails to make reasonable accommodations violates the

-24-

> statute, no matter what its intent, unless it can show that the proposed accommodations would create undue hardship for its business. See 42 U.S.C. § 12112(b)(5)(A).

Id. Such failure to accommodate, of course, is precisely what the jury determined occurred in this case, and just a few examples illustrate why that conclusion is well founded in the evidence.

For instance, defendant contends that requiring plaintiff to "cover" the cash register during busy times was not shown to be discriminatory, particularly because other employees were also asked to cover the register during busy times. Defendant, of course, misses the point entirely. For plaintiff to cover the cash register entailed a laborious and, according to her, humiliating process in which she would have to install a specially designed stool and move herself from her wheelchair to the stool--all in a situation which, by defendant's own characterization, must be presumed to have included numerous observers, many of whom were likely to be impatient. Under these circumstances, of which defendant was plainly aware, it was not enough to treat plaintiff like other employees. In fact, to do so was an unlawful failure to accommodate her disability in violation of the ADA.

Even more egregious is the defendant's argument that it did not act unlawfully when it ordered plaintiff not to park in the store's handicapped parking spaces. In defense of its actions, Pueblo states in its brief that "[a]t that time, as Ms. Marcano states, she was asked

to park in the same area as all other employees, away from the Store. In essence, she was treated as all other employees." Of course, here again, it is not sufficient to treat plaintiff "as all other employees." Plaintiff, due to her disability, must use parking spaces specially set aside for handicapped individuals, because those parking spaces are not only closer to the store but are also designed to accommodate her transfer from vehicle to wheelchair. Her use of such spaces is not a matter of preference or convenience, but a matter of practicality--she simply cannot function in a crowded parking space. For defendant to posit that treating her like everyone else--in other words, like she had no disability--is practically a concession of its failure to accommodate her.

Based on the foregoing, we have no trouble in rejecting this aspect of defendant's sufficiency of the evidence argument.

### E. Damages Awarded to Plaintiff's Husband

Defendant's last challenge to the jury verdict is its most forceful one. Pueblo contends that the damages awarded to plaintiff's husband, Osvaldo Román, were unsupported by and in fact contrary to Mr. Román's trial testimony.

We will overturn a jury verdict only if "the verdict was so clearly against the weight of the evidence as to amount to a manifest miscarriage of justice." PH Group Ltd. v. Birch, 985 F.2d 649, 653 (1st Cir. 1993). Although this a strict standard, our review of the record compels the conclusion that the damages awarded to Román were not reasonably based on the evidence presented at trial. Román's trial testimony, which was the only evidence admitted in support of his damages claim, unambiguously attributed the injury suffered by his and Marcano's marriage to her termination rather than to defendant's failures to accommodate her. He described their marriage prior to January of 1997 as a "peaceful, normal" marriage and testified that plaintiff was an "easy going person" who "got along with everyone," including with him and their two children. He further testified that Marcano's personality changed and their relationship deteriorated drastically following her dismissal in 1997. Conspicuously absent from Román's testimony is any reference whatsoever to injuries resulting from incidents other than plaintiff's termination. However, as discussed above, plaintiff's unlawful termination claim was properly

dismissed by the district court and therefore cannot form the basis of a derivative award to Román.[7] Consequently, we have no choice but to vacate the jury's award of $50,000 to Román.

### CONCLUSION

For the reasons set forth above, we vacate the award of $50,000 in damages to plaintiff Osvaldo Román, and we affirm the judgment in all other respects.

**Affirmed in part, vacated in part.**

---

[7] While recognizing a cause of action under Civil Code Article 1802 for family members of individuals suffering employment discrimination, see Santini-Rivera v. Service Air., Inc., 94 J.T.S. 121 (P.R. 1994), the Puerto Rico Supreme Court has referred to that cause of action as flowing from, or "contingent upon," the underlying discrimination claim of the employee, although the cause of action is independently founded in the general tort provision of the civil code (Article 1802) and not in the anti-discrimination laws, see Campos v. Banco de Ponce, 138 D.P.R. 366, 370-71 (P.R. 1995). Plaintiff has offered us no argument or authority suggesting that Román's claim could survive independent of plaintiff's underlying discrimination claim.