George D. BAILEY, Plaintiff,

v.

GEORGIA–PACIFIC CORPORATION,
Defendant.

No. 01–CV–35–B–S.

United States District Court,
D. Maine.

Dec. 17, 2001.

4

Donald F. Brown, Bangor, ME, for George Bailey.

Charles A. Harvey, Jr., Harvey & Frank, Portland, ME, for Georgia Pacific Corporation.

## ORDER GRANTING SUMMARY JUDGMENT

SINGAL, District Judge.

Plaintiff claims that his former employer refused to reasonably accommodate his

disability of alcoholism and terminated him because of that disability, in violation of federal and state employment discrimination law and state tort law. Presently before the Court is Defendant's Motion for Summary Judgment (Docket # 4). For the reasons stated below, the Court GRANTS Defendant's Motion.

## I. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c). To avoid summary judgment, a party must point to disputed facts that, if resolved his way, would permit a jury to find in his favor. *See, e.g., Blackie v. Maine,* 75 F.3d 716, 721 (1st Cir.1996). For purposes of summary judgment analysis, a court must construe all disputed facts in the nonmoving party's favor. *See, e.g., McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995).

Based on these standards, the Court takes the following version of the facts as true for the purposes of this Motion.

## II. BACKGROUND

In May 1987,[1] Plaintiff George Bailey began working as a paper handler at Defendant Georgia–Pacific Corporation's paper mill in Woodland, Maine. By 1999, he had advanced to the position of fifth hand on one of the paper machines.

Throughout his years of employment at Georgia–Pacific, Bailey suffered from alcoholism. He first sought substance abuse counseling in 1976, but he continued drinking thereafter, including the years during which he worked at Georgia–Pacific's Woodland mill.

In spite of his alcoholism, Bailey was able to fulfill his responsibilities at Georgia–Pacific adequately, with a few exceptions. For example, over the course of his employment, Bailey was called in from time to time to work extra shifts. On some of those occasions, he had been drinking when he received the call and consequently refused the overtime. Also, in August 1998, Bailey was sent home from work upon arrival one day because his supervisor believed he had been drinking. Georgia–Pacific required him to attend counseling as a result of the 1998 incident.

Meanwhile, Bailey's alcoholism created somewhat greater difficulties in his personal life. Both prior to and during his employment at Georgia–Pacific, he accumulated multiple convictions for operating a motor vehicle while intoxicated ("OUI"). In early 1999, these legal difficulties collided with his work responsibilities.

On March 23, 1999, Bailey pleaded guilty to an OUI charge and began a four-month term of incarceration. The day after he entered his plea, his attorney contacted Georgia–Pacific to ask whether the company would be willing to supervise Bailey if he returned to work as part of a work release program. Although Georgia–Pacific had assumed the responsibility of supervising Woodland mill employees in work release programs in the past, it declined to do so for Bailey. By letter dated March 25, 1999, the company explained

---

1. The Complaint and certain documents supporting or opposing Defendant's Motion identify Plaintiff's hiring date as May 2, 1988. However, Plaintiff's response Statement of Material Facts claims that he was hired in May 1987 (Docket # 10), and Defendant admitted this fact in its Reply Statement of Material Facts (Docket # 17). The inconsistency is immaterial since the date on which Plaintiff was hired is irrelevant to the disposition of this Motion.

that "the company [would] not agree to appoint personnel to be responsible for work release reporting requirements or to undertake other obligations that may be required by the program." (*See* Bailey Aff. Ex. C (Docket # 11).)

When his efforts to arrange work release failed, Bailey was unable to report for work. By the end of March 1999, he had used up all of his sick and personal leave days and still was not due to be released from jail until July. Georgia–Pacific notified him of his termination in a letter dated April 1, 1999, explaining,

> Your attorney tells us that you will be incarcerated for a period of at least four more months. Your attorney may have informed you that the company is not interested in participating in a work release program for the period of your employment.
>
> All Georgia–Pacific employees are expected to be available for work as scheduled. You have used all of your remaining vacation time since your incarceration began. Because you have not been and will not be available for work during your imprisonment, your employment is terminated for cause, effective today.

(*See* Bailey Aff. Ex. D (Docket # 11).)

After his termination, Bailey timely filed a complaint with the Maine Human Rights Commission and the Equal Employment Opportunity Commission. He received a right-to-sue letter on November 27, 2000. On February 21, 2001, he filed this action, organized into three counts: Count I alleges that his termination violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.;* Count II is a parallel claim pursuant to the Maine Human Rights Act, 5 M.R.S.A. § 4551 *et seq.;* Count III is a state tort claim for negligent infliction of emotional distress.

## III. DISCUSSION

### A. Americans With Disabilities Act Claim

Plaintiff alleges that Defendant's refusal to participate in the work release program constituted unlawful employment discrimination on the basis of his disability of alcoholism. Title I of the Americans With Disabilities Act ("ADA") prohibits an employer from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The concept of discrimination also includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. . . ." 42 U.S.C. § 12112(b)(5)(A). The Court will therefore consider whether Defendant's failure to cooperate with the work release program was unlawful discrimination because it constituted either (1) discriminatory discharge, or (2) failure to provide a reasonable accommodation.

#### 1. Discriminatory Discharge

 Defendant's refusal to participate in the work release program was tantamount to termination of Plaintiff's employment. Defendant was aware that Plaintiff would be incarcerated for several months and would be unable to report for work without Defendant's cooperation. The decision not to participate in the work release program led ineluctably to Plaintiff's discharge. To prevail on the theory that this de facto termination was unlawful under the ADA, Plaintiff must establish that (1) he was disabled within the meaning of the ADA, (2) with or without reasonable accommodation, he was able to perform the essential functions of his job, and (3) the Defendant terminated his employment in whole or in part because of his disabili-

ty. *Bilodeau v. Mega Indus.*, 50 F.Supp.2d 27, 33 (D.Me.1999) (citing *Criado v. IBM Corp.*, 145 F.3d 437, 441 (1st Cir.1998)). Summary judgment for Defendant on any one of the three elements defeats the discriminatory discharge claim in its entirety. *See, e.g., Feliciano v. Rhode Island*, 160 F.3d 780, 788 (1st Cir. 1998).

### a. Plaintiff's Disability

■ As an initial step in making out any ADA claim, the Plaintiff must establish that he is a person with a "disability." The ADA defines "disability" as

(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual,

(B) a record of such an impairment, or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). The parties dispute whether Plaintiff has produced enough evidence to create a genuine issue of fact about whether his alcoholism rises to the level of a disability within the ADA's definition.[2] Even if there are "genuine" issues of fact as to whether the Plaintiff suffers from a disability, however, they are not "material." They have no "potential to change the outcome of the suit under the governing law." *McCarthy*, 56 F.3d at 315. The Court will assume that the Plaintiff's alcoholism is a disability, as he contends. Even with the benefit of this assumption, his ADA claim fails.

### b. Qualified Individual With A Disability

■ In addition to establishing that his alcoholism constitutes a disability, Plaintiff must also demonstrate that he is a *qualified* individual with a disability. A "qualified individual with a disability" is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The moment of the discriminatory action is determinative: Plaintiff must demonstrate that he was a qualified individual with a disability at the time Defendant opted not to cooperate with the work release program. *See Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir.1998).

Plaintiff argues that he was qualified for his employment when Defendant made this decision not to permit him to return to work. He retained the skills necessary to perform his job and claims that he was willing and prepared to report to work on whatever schedule the Defendant approved. He argues that he was otherwise qualified, and it was only the Defendant's refusal to cooperate with the work release that rendered him unable to report to work.

■ Unfortunately, Plaintiff has failed to provide the Court sufficient information about the work release program to which he refers, and it is impossible to determine from this record whether the program would have allowed him to perform all the essential functions of his job. Ordinarily,

---

2. Specifically, Defendant argues that Plaintiff testified at deposition that he was able to perform all major life functions in spite of his alcoholism, and it was only when Defendant moved for summary judgment that Plaintiff submitted an affidavit claiming that he is, in fact, substantially impaired. It is true that ordinarily, a party may not raise a genuine issue of fact by merely filing affidavits that are contrary to earlier sworn testimony. *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir.1994). However, because the Defendant prevails on other grounds, the Court declines to address this prong of Defendant's attack.

attendance is one of the essential functions of any job. *See McDonald v. Menino*, No. 96–10825–RGS, 1997 WL 106955, *3 (D.Mass. Jan.3, 1997) ("Some job requirements, like regular attendance, punctuality, and sobriety, are so fundamental to the workplace that they are, for all practical purposes, deemed essential as a matter of law."); *see also Nowak*, 142 F.3d at 1003. Whether Plaintiff would actually have been able to report for work depends on details about the work release program itself, such as whether Plaintiff was eligible for or had been accepted into the program and how many hours a week he would have been permitted to work. Because Plaintiff has failed to provide these specific and significant facts, the Court is skeptical that he has raised a genuine issue as to whether the existence of the program rendered him qualified. *See Colantuoni*, 44 F.3d at 6 (emphasizing that nonmovant must point to evidence that, if believed, would be sufficient to find in his favor).

However, the Court will construe the scant available facts in favor of the Plaintiff and assume that he was eligible for work release and that the work release program would have permitted him to fulfill all of his responsibilities at the mill had Defendant cooperated. Assuming, then, that he was a qualified individual with a disability at the time Defendant denied him the opportunity for work release, the Court reaches the last element of the discriminatory discharge claim and asks whether Defendant declined to participate in the work release *because of* Plaintiff's alcoholism.

### c. Adverse Employment Action Because of His Disability

Plaintiff relies on the so-called "*McDonnell Douglas* burden-shifting" approach to establish that Defendant refused to participate in work release because of Plaintiff's disability. *See Bilodeau*, 50 F.Supp.2d at 33 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Although the Court is cognizant of the First Circuit's warning that the *McDonnell Douglas* analysis is not always a useful guide for summary judgment decisions, *see Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 430 (1st Cir.2000), Plaintiff has organized his arguments according to the *McDonnell Douglas* framework, and the Court deems it appropriate to address them accordingly.

■ To establish Defendant's discriminatory motivation under this approach, Plaintiff may state a prima facie case by demonstrating that (1) he was subject to an adverse employment action, (2) he was replaced by a nondisabled person or was treated less favorably than nondisabled employees, and (3) he suffered damages as a result. *Bilodeau*, 50 F.Supp.2d at 33. Plaintiff succeeds in stating a prima facie case. The Court accepts that Defendant's decision not to participate in the work release program was tantamount to terminating the Plaintiff's employment, which qualifies as an adverse employment action. *See, e.g., id.* Defendant concedes that it has permitted at least three other incarcerated employees to return to the mill on work release, which raises the possibility that Plaintiff was treated less favorably than nondisabled employees. Finally, Plaintiff claims that he has been unable to secure alternative employment since his termination, which suffices to raise the claim that he has suffered damages.

■ Once the Plaintiff has made out this prima facie case, it is up to the Defendant to respond with "evidence indicating that there existed a legitimate, nondiscriminatory reason for the complained-of action." *Id.* at 41; *see Marcano–Rivera v. Pueblo Int'l, Inc.*, 232 F.3d 245, 251 (1st Cir.2000). Defendant justified its decision

not to participate in the work release program on the basis that it did not wish to assume the burdens associated with supervising an incarcerated employee. (*See* Bailey Aff. Ex. C (Docket # 11).) This constitutes a nondiscriminatory reason for the adverse employment action, and at this stage of the analysis, "the employer's legitimate nondiscriminatory reason is not evaluated insofar as its credibility is concerned." *Maull v. Div. of State Police,* 141 F.Supp.2d 463, 471 (D.Del.2001). *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Marcano–Rivera,* 232 F.3d at 251.

■ The burden then shifts back to Plaintiff to respond with evidence that would permit a factfinder to conclude that the Defendant's reason is not true but is merely a pretext for unlawful discrimination. *Marcano–Rivera,* 232 F.3d at 251; *Bilodeau,* 50 F.Supp.2d at 42. Plaintiff argues that Defendant's explanation is pretextual because Defendant has in fact offered conflicting reasons for refusing to participate in the program. *See, e.g., Dominguez–Cruz,* 202 F.3d at 432 (suggesting that an employer's offering different reasons at different times for terminating a plaintiff may give rise to an inference that those reasons are pretextual). In correspondence notifying him of his termination, Defendant emphasized the burden that work release would place on the company. However, a letter that Defendant's representative wrote to the Maine Human Rights Commission defending the company against Plaintiff's charges indicates that the company was not willing to participate in work release because Plaintiff had a problematic disciplinary history at the company. (*See* Bailey Aff. Ex. E (Docket # 11).)

The letter explains that Plaintiff had accumulated a large number of unexcused absences and that other employees complained about working with him because they believed he was intoxicated at times. It also refers to the August 1998 incident in which Plaintiff was disciplined for reporting to work intoxicated. The letter emphasizes the safety concerns associated with operating a paper mill and states that Defendant could not continue to tolerate the safety risks posed by an employee who had reported to work intoxicated in the past, and whose recent OUI conviction demonstrated a disregard for the extreme safety risk inherent in operating dangerous equipment while intoxicated.

■ Unfortunately for the Plaintiff, even if the Defendant's decision was, in fact, based on Plaintiff's disciplinary history, that motive does not constitute discrimination under the ADA. The ADA specifically provides that employers "may hold an employee ... who is an alcoholic to the same qualification standards for ... job performance and behavior that such entity holds other employees, *even if any unsatisfactory performance or behavior is related to the ... alcoholism of such employee....* " 42 U.S.C. § 12114(c)(4) (emphasis supplied). An employer's decision to terminate an employee based on his alcohol-related misconduct is not termination because of his disability and does not violate the ADA. *See Brown v. Lucky Stores, Inc.,* 246 F.3d 1182, 1187 (9th Cir.2001); *Maddox v. Univ. of Tennessee,* 62 F.3d 843, 845–48 (6th Cir.1995); *Leary v. Dalton,* 58 F.3d, 748, 753–54 (1st Cir.1995); *Little v. FBI,* 1 F.3d 255, 259 (4th Cir.1993); *Maull,* 141 F.Supp.2d at 477; *Randall v. Port of Portland,* 21 F.Supp.2d 1225, 1228 (D.Or.1998). Therefore, Defendant was within its rights even if the real reason for discharging Plaintiff was his alcohol-related misconduct. Plaintiff has not raised a genuine issue of material fact as to whether Defendant refused to participate in the

work release program purely because he was an alcoholic.

## 2. Failure to Provide a Reasonable Accommodation

 Alternatively, the Court will consider whether by declining to participate in work release, Defendant denied Plaintiff a reasonable accommodation of his disability. As with the above analysis, the Court assumes that the Plaintiff's alcoholism rose to the level of a disability and that the work release would have resolved his inability to come to work. With the benefit of these assumptions Plaintiff is an "otherwise qualified individual with a disability," who would be entitled to "reasonable accommodations to [his] known physical or mental limitations." 42 U.S.C. § 12112(b)(5)(A)

Plaintiff's argument nevertheless fails because the concession he sought was not an accommodation of his *disability.* His incarceration was distinguishable from his alcoholism for purposes of the ADA. Even if his alcoholism arguably compelled him to become intoxicated, his OUI conviction did not follow directly from his intoxication, but rather from his choice to operate a vehicle. *See Leary,* 58 F.3d at 754 ("It cannot be argued that the circumstances of incarceration [for DUI] and inability to make bail are uniquely or even specially associated with Leary's disability [alcoholism]."); *Maddox,* 62 F.3d at 848 (6th Cir. 1995) ("[W]hile alcoholism might compel [the plaintiff] to drink, it did not compel him to operate a motor vehicle. . . ."); *Despears v. Milwaukee County,* 63 F.3d 635, 637 (7th Cir.1995) ("[Plaintiff's] disability concurred with a decision to drive while drunk to produce the loss of license and resulting demotion."). *But see Teahan v. Metro–North Commuter R.R. Co.,* 951 F.2d 511, 517 (2d Cir.1991) (holding that whether absenteeism was a direct result of a plaintiff's alcoholism was a jury question).

Moreover, the Plaintiff's need for the Defendant to participate in the work release program depended on the duration of Plaintiff's incarceration rather than his disability. For example, had he recovered completely from his alcoholism in May 1999, Plaintiff still would have required the "accommodation" until his incarceration ended in July. Furthermore, it is noteworthy that even though his disability predated his employment at the Woodland mill by over a decade, Plaintiff never requested an accommodation before he was incarcerated. *See Brown,* 246 F.3d at 1188 (taking into consideration whether the employee sought accommodation prior to her legal difficulties in determining whether accommodation was due); *Taub v. Frank,* 957 F.2d 8, 11 (1st Cir.1992) (same); *Flynn v. Raytheon Co.,* 868 F.Supp. 383, 387 n. 9 (D.Mass.1994), *aff'd* 94 F.3d 640 (1st Cir. 1996) (unpublished) (same).

 Finally, the provision of the ADA that allows employers to hold alcoholic employees to the same behavior and performance standards as other employees is also relevant here. *See* 42 U.S.C. § 12114(c)(4). It confirms that Congress did not intend for the term "reasonable accommodation" to encompass the kind of allowance that Plaintiff sought. By including this provision, Congress made explicit its intent " 'to allow employers to respond to addiction-related misconduct in a way that they cannot respond to other disability-related misconduct.' " *Maull,* 141 F.Supp.2d at 475 (quoting *Salley v. Circuit City Stores, Inc.,* 160 F.3d 977, 981 (3d Cir.1998)). Therefore, regardless of what reasonable accommodations might be required for any other disability, Congress has designated alcoholism to be a special case, and the ADA is clear that an employer is not required to accommodate ab-

sences from work, even if the absences are ultimately attributable to alcoholism. *Smith v. Davis*, 248 F.3d 249, 251 (3d Cir.2001). *Cf. Flynn*, 868 F.Supp. at 387 ("Reasonable accommodation does not extend to accommodating an alcoholic employee's showing up for work under the influence of alcohol or drinking alcohol on the job.")

■ In short, it is not a "reasonably required accommodation to overlook infractions of law," *Despears*, 63 F.3d at 637 (citing *Leary*, 58 F.3d at 753), and the ADA did not require the Defendant to participate in the work release program as an accommodation of Plaintiff's disability. Even assuming that he is an otherwise qualified individual with a disability, Plaintiff fails to raise a genuine issue of material fact as to whether Defendant failed to reasonably accommodate him.

B. Maine Human Rights Act Claim

■ The Maine Human Rights Act ("MHRA"), like the ADA, protects "qualified" individuals with disabilities from employment discrimination based on their disabilities. 5 M.R.S.A. § 4572(2). The Court ordinarily does not distinguish between analysis under the ADA and the MHRA. *Bilodeau*, 50 F.Supp.2d at 32. *See also Bowen v. Dep't of Human Serv.*, 606 A.2d 1051, 1053 (Me.1992). Therefore, Defendant is entitled to summary judgment on the claims under the MHRA as well.

C. State Tort Claims

In contrast to the MHRA claim, which parallels the federal ADA claim exactly, Plaintiff's claim for negligent infliction of emotional distress raises independent issues of state tort law. Having granted summary judgment on the only federal claim and its state law counterpart, the Court has discretion to decline to exercise jurisdiction over the remaining state law claim. 28 U.S.C. § 1367(c). *Rivera v. Murphy*, 979 F.2d 259, 264 (1st Cir.1992). The Court declines to rule on the Plaintiff's state tort law claim for negligent infliction of emotional distress and dismisses it without prejudice to its being renewed in state court.

IV. CONCLUSION

For the reasons discussed above, the Court GRANTS Defendant's Motion for Summary Judgment. The Court GRANTS summary judgment in favor of Defendant on Counts I and II and DISMISSES Count III WITHOUT PREJUDICE.

SO ORDERED.